30180.. SHEA, by guardian ad litem, *v.* GEHAN.

DECIDED DECEMBER 1, 1943.

*Henry G. Howard,* for plaintiff in error.

*Vaux Owen, Ivan F. Parrigin, Fred T. Allen,* contra.

STEPHENS, P. J. Edward F. Shea, a non-resident of Georgia, while a patient in the United States Veterans Bureau Hospital in Richmond County sought to be discharged therefrom. Thomas P. Gehan petitioned the court of ordinary of Richmond County to have Shea adjudged insane and incompetent, and therefore subject to be committed to the veterans hospital. At the hearing Edward F. Shea appeared by guardian ad litem in opposition to the petition, and filed pleadings in which he urged that the court of ordinary of Richmond County did not have jurisdiction of the subject matter of the petition, and denied that he was subject to be committed to or restrained in the veterans hospital. The court of ordinary after hearing evidence sustained the plea to the jurisdiction, and dismissed the petition on two grounds: first, because the evidence failed to show that Shea was a resident of Richmond County, but showed that he was a non-resident of Georgia and was also a patient in the United States Veterans Hospital on a United States government reservation; and second, because the court of ordinary of Richmond County was without jurisdiction to commit a person to a United States hospital operated by the Veterans Bureau on a United States reservation, although it was located within the territorial limits of Richmond. County, Georgia. Thereupon the petitioner applied to the superior court for a writ of certiorari, in which he excepted to the judgment of the court of ordinary overruling and denying exceptions to the judgment dismissing the petition

for want of jurisdiction. The superior court, after a hearing on May 3, 1943, rendered a judgment sustaining the certiorari and remanding the case to the court of ordinary with instructions. However, on May 6, 1943, during the term, that order was revoked and nullified by the court and the following judgment was rendered: "On May 3, 1943, I entered an order sustaining the certiorari in the above stated case and setting aside the judgment of the court of ordinary of Richmond County, Georgia, dated February 4, 1943. I further directed the ordinary of Richmond County, Georgia, to issue a commission, as provided by Section 49-604 of the Code for the purpose of determining the sanity or insanity of Edward F. Shea, and follow the proceedings set out in that section and related sections, and that if the commission made a return finding the said Shea subject to be committed, then I directed the ordinary to commit him to the Veterans Administration Hospital at Augusta, Georgia. The aforesaid order of May 3, 1943, was not a final judgment but was of a directory nature, and not being a final judgment, a direct bill of exceptions cannot be filed thereto for the purpose of settling the legal questions raised in this proceeding, and, as the decision of such questions is of paramount importance in this case, I have, therefore, during this the March Term, 1943, of the superior court of Richmond County, Georgia, same being the term at which said order was entered, reconsidered the same, and I now revoke and set aside that order, and in lieu thereof enter the following order and judgment in said case, to wit, as follows: Upon due consideration of the issues of law in this case, it is ordered and adjudged that the certiorari be sustained and that the judgment rendered in the court of ordinary, dated February 4, 1943, be reversed and set aside and a final judgment is hereby rendered in favor of Thomas P. Gehan, the plaintiff in certiorari, and against Edward F. Shea, through his guardian ad litem, the defendant in certiorari." To this judgment Edward F. Shea excepted.

A State under its general police power to look after and protect the general welfare and safety of the people thereof generally has the power, and it is its duty, to enact laws relative to the treatment and confinement of persons who are within its territorial limits and who are found to be insane. The State does not seek simply to confine insane persons, but in a broad sense, acts as their guard-

ian, and will confine them in an asylum, both for the protection of the people at large and for the safety and well being of the insane persons. An asylum is not a prison; but a place of refuge and safety. Insanity is a disease, and under the police power, as stated, each State has the right to treat one within its borders who has the misfortune to suffer from this disease. "The State alone, as parens patriæ, is charged with the duty of caring for the insane within its borders and may adopt whatever method of procedure it may desire for inquisition into their condition, and the necessity for their confinement, provided the same is not in contravention of the Constitution or laws of the United States." Shapley *v.* Cohoon, 258 Fed. 752, 755; Hammon *v.* Hill, 228 Fed. 999, 1001; 32 C. J. 679; 12 C. J. 925, 1211. "Generally speaking, any insane person, using the term in its broadest sense, may be restrained of his liberty where his welfare or the welfare of others requires it. This rule is not restricted to resident lunatics; it applies as well to non-resident lunatics found within the State." 32 C. J. 678. The court of ordinary of this State is vested with original, exclusive, and general jurisdiction over insane persons and the appointment and removal of their guardians. Code, §§ 49-601; 24-1901 (5, 10). The Code, § 79-209, provides that all persons who are non compos mentis shall "have their persons and estates, or either of them, placed in the control of guardians." The Supreme Court has held that this Code section is broad enough to cover resident and non-resident persons who are non compos mentis. *Coker* v. *Gay,* 154 *Ga.* 337, 341 (114 S. E. 217). The same case likewise holds that the provisions of the Code, § 49-601, that "the ordinaries of the several counties of this State may appoint guardians for idiots, lunatics and insane persons . . is broad enough to cover all classes of idiots, lunatics, and insane persons, resident and non-resident." That case further holds that the Code, § 24-1901 (5), providing that courts of ordinary have original, exclusive, and general jurisdiction of the appointment and removal of guardians of persons of unsound mind, is not confined solely to persons of unsound mind who reside in this State, but is comprehensive, enough to embrace persons of unsound mind who live beyond the confines of Georgia. While the court in that case held that "to give the courts of ordinary of this State jurisdiction in this matter, the lunatic must be a resident of this State, or own property within

the county in which the ordinary acts," and that "the presence of either gives that court jurisdiction," the court was clearly not confining the words "resident of this State" to mean strictly a person whose legal residence was in this State, but was using these words to include any person who at the time was within the confines of this State, and that the "presence" of the person in the county gave jurisdiction to the court of ordinary of that county. This is illustrated by the early holding of the Supreme Court in *Grier* v. *McLendon*, 7 *Ga.* 362, 364, in which it was held that, "In order to have given the court of ordinary of Troup County jurisdiction to appoint a guardian for Susan McLendon, *she must either have been within the limits of the county*, at the time of the appointment, or had property within the limits of the county." That statement and ruling of the court was approved in *Coker* v. *Gay*, supra.

A court of ordinary has jurisdiction to adjudge and have committed an insane person who is present in that county in keeping with the law in general relative to the power of a State over persons found within its borders. The Code, § 15-202, provides that "the jurisdiction of this State and its laws extend to all persons while within its limits, whether as citizens, denizens, or temporary sojourners." Likewise section 15-302 provides: "Exclusive jurisdiction in and over any lands so acquired by the United States is hereby ceded to the United States for all purposes except service upon such lands of all civil and criminal process of the courts of this State; but the jurisdiction so ceded shall continue no longer than said United States shall own such lands. The State retains its civil and criminal jurisdiction over persons and citizens in the said ceded territory, as over other persons and citizens in this State." Clearly under this statute the court of ordinary of Richmond County, if it otherwise has jurisdiction, would have jurisdiction to commit a person to the veterans hospital in that county even though that person is already a patient there and is seeking to be discharged.

Neither the Code, § 49-601, nor the act of 1929, pp. 248 et seq., as amended by the act of 1937, pp. 284 et seq., and codified as §§ 49-801 et seq., limit the power of the ordinary over insane persons who are citizens of Georgia and resident in the county, but such statutes are broad enough to embrace, in view of the law in gen-

eral, the power and jurisdiction of such courts over insane persons who are present in their respective counties. The Code, §§ 49-801 et seq., has reference to incompetent world war veterans, the appointment of guardians therefor, and the commitment of such persons to a United States Veterans Bureau hospital for treatment and confinement, and the Code, § 49-813, gives to the officials of such hospital the same powers that are now exercised by the superintendent of the State hospital for insane persons at Milledgeville, and subjects those committed to the veterans hospital to the same rules and regulations. This clearly has reference to the United States Veterans Bureau Hospital within the territorial limits of this State. Ga. Code Ann., § 49-818, which is taken from the act of 1937, pp. 684, 688, provides that the general guardianship laws of this State and the laws establishing the practice in such matters shall be applicable to incompetent world war veterans and their estates except where inconsistent with the provisions of the Code, §§ 49-801 et seq.

Applying the foregoing rulings the court of ordinary of Richmond County erred in rendering judgment to the effect that it did not have jurisdiction to determine whether Edward F. Shea was insane and to commit him to the United States Veterans Hospital in Richmond County if found to be insane, and the superior court of Richmond County, on certiorari, correctly reversed the court of ordinary, and held that such court did have jurisdiction.

*Judgment affirmed. Sutton and Felton, JJ., concur.*