S94A0675. WILES v. WILES.
(449 SE2d 681)

FLETCHER, Justice.

We granted the application for discretionary appeal in this divorce case to determine the scope of the privilege that protects communications between a psychiatrist and patient. We hold the psychiatrist-patient privilege extends to a person authorized to practice medicine who devotes a substantial portion of his or her time in the diagnosis or treatment of a mental or emotional condition, including alcohol or drug addiction.

James Wiles sought the psychiatric records of a patient of his wife Mary Wiles, a licensed medical doctor with a specialty in internal medicine. He contends that the records are relevant to the issues of custody and visitation because the couple's three children have

seen the patient frequently.[1] Dr. Wiles and her patient opposed production of the records based on the psychiatrist-patient privilege. The trial court denied Mr. Wiles' motion to compel and granted Dr. Wiles' motion to quash the subpoena, holding that a medical doctor who is treating patients for psychiatric problems may claim the psychiatrist-patient privilege. The judge certified the order for immediate review. We affirm.

1. The Georgia Civil Practice Act provides for the discovery of "any matter, not privileged, which is relevant to the subject matter involved in the pending action." Although there is no privilege for general physician-patient communications in Georgia, two statutes extend a privilege against disclosure to the confidential communications between a psychiatrist or licensed psychologist and patient. See OCGA §§ 24-9-21 (5); 43-39-16; *Nat. Stop Smoking Clinic-Atlanta v. Dean,* 190 Ga. App. 289 (378 SE2d 901) (1989).[2]

OCGA § 24-9-21 (5) provides for the exclusion of the communications between a psychiatrist and patient on grounds of public policy.[3] The purpose of the privilege is to encourage the patient to talk freely without fear of disclosure and embarrassment, thus enabling the psychiatrist to render effective treatment of the patient's emotional or mental disorders. 1 C. McCormick, McCormick on Evidence, § 98 at 369-370 (J. Strong 4th ed. 1992). The privilege may be asserted only on behalf of the patient's interest. *Wills v. Wills,* 215 Ga.

---

[1] We do not address the relevancy of the psychiatric records of a person who is not a party to a divorce action since the issue was not raised on appeal.

[2] One authority describes the general physician-patient privilege as the "most common source of protection against the disclosure of psychotherapist-patient communications, in the absence of an express psychotherapist-patient statutory privilege." Annotation, "Privilege, In Judicial or Quasi-Judicial Proceedings, Arising From Relationship Between Psychiatrist or Psychologist and Patient," 44 ALR3d 24, 40-42 (1972). According to another treatise, thirty-six states have a general physician-patient privilege and nine states have a psychotherapist-patient privilege. See J. Wigmore, Wigmore on Evidence, § 2380, n. 5 (McNaughton rev. ed. 1961) (Supp. 1994); see also 2 S. Stone & R. Taylor, Testimonial Privileges, §§ 7.01, n. 3 & 7.03, n. 17 (2d ed. 1993) (concluding forty-one states have some form of the physician-patient privilege and the remaining nine states, except West Virginia, protect persons engaged in "psychotherapy"). Georgia, Alabama, Connecticut, Maryland, and Tennessee have a psychiatrist-patient privilege; Florida and Kentucky have incorporated their psychiatrist-patient privilege into a psychotherapist-patient privilege. See infra note 4; Ky. R. Evid. 507.

[3] The statute providing for the psychiatrist-patient privilege states:

**24-9-21. Confidentiality of certain communications.**

There are certain admissions and communications excluded on grounds of public policy. Among these are:

(1) Communications between husband and wife;

(2) Communications between attorney and client;

(3) Communications among grand jurors;

(4) Secrets of state; and

(5) Communications between psychiatrist and patient.

Code section 43-39-16 places the confidential communications between a licensed psychologist and client on the same basis as the attorney-client relationship.

556 (111 SE2d 355) (1959). It does not apply to communications between a court-appointed psychiatrist and defendant during mental examinations in preparation for a criminal trial because the requisite professional relationship does not exist. *Massey v. State*, 226 Ga. 703, 704 (177 SE2d 79) (1970), cert. denied, 401 U. S. 964 (1971). A patient who is a party may waive the privilege by calling the psychiatrist as a witness to testify about the party's mental condition. *Fields v. State*, 221 Ga. 307, 308-309 (144 SE2d 339) (1965).

2. The Georgia Code does not define "psychiatrist" or the practice of psychiatry. The state licenses physicians to "practice medicine" through the Composite State Board of Medical Examiners. OCGA § 43-34-20. To obtain a license, a person must graduate from a medical or osteopathic college, provide evidence of good moral character, complete a board-approved internship or residency training, and pass a board examination. OCGA § 43-34-27 (Supp. 1993). Doctors of medicine licensed to practice in the state obtain a medical specialty, such as psychiatry, based on their internship and residency. See generally Rules of Composite St. Bd. of Med. Examiners, ch. 360-2, Ga. Comp. Rules & Regs. (1993) (specifying requirements for medical licenses).

The case law is inconsistent concerning whether the practice of psychiatry is limited to medical doctors with a specialty in psychiatry. In considering whether the psychiatrist-patient privilege extended to a family practitioner consulted by a man accused of rape, the Court of Appeals stated that it did not pertain to "a physician in any specialty other than psychiatry." *Barnes v. State*, 171 Ga. App. 478, 482 (320 SE2d 597) (1984). On the other hand, this court has allowed medical doctors who are not psychiatrists to testify as expert witnesses on the sanity, mental development, and mental capacity of persons.

> In our opinion whether an examining physician is or is not a psychiatrist is a matter which may affect the extent of his expertise in evaluating mental condition[s], and therefore may affect the weight of any opinion or evaluation, . . . but it does not affect admissibility.

*Petty v. Folsom*, 229 Ga. 477, 481 (192 SE2d 246) (1972). Similarly, the Court of Appeals ruled that the statutory requirement of a psychiatric evaluation was satisfied by a county medical examiner "qualified to give such an opinion who may not be a board-certified psychiatrist." *Henderson v. State*, 157 Ga. App. 621, 623 (278 SE2d 164) (1981).

No other state with a psychiatrist-patient privilege has limited the term "psychiatrist" to medical doctors specially trained to practice psychiatry, as the dissent proposes and the Court of Appeals held

in *Barnes*. See 8 J. Wigmore, Wigmore on Evidence, § 2380, n. 5 (J. McNaughton rev. ed. 1961) (Supp. 1994). The problem with this definition is that it places inordinate emphasis on the training of medical doctors while ignoring their time spent in practice. States generally have defined a psychiatrist as a licensed medical doctor who spends a substantial portion of time practicing psychiatry or who is engaged in the diagnosis or treatment of a mental or emotional condition.[4]

In construing the psychiatrist-patient privilege, this court must give a reasonable interpretation to the statutory language to carry out the legislative intent. *Mayor &c. of Hapeville v. Anderson*, 246 Ga. 786 (272 SE2d 713) (1980). Communications between the psychiatrist and patient are protected because "most psychiatric analysis and treatment must come from the mind of the patient." *Gilmore v. State*, 175 Ga. App. 376, 378 (333 SE2d 210) (1985). As one treatise explains:

> "Among physicians, the psychiatrist has a special need to maintain confidentiality. His capacity to help his patients is completely dependent upon their willingness and ability to talk freely. This makes it difficult if not impossible for him to function without being able to assure his patients of confidentiality and, indeed, privileged communication . . . . A threat to secrecy blocks successful treatment."

1 McCormick on Evidence at 370 (quoting four sources).

Consistent with this purpose, we interpret "psychiatrist" in OCGA § 24-9-21 to mean "a person licensed to practice medicine, or reasonably believed by the patient so to be, who devotes a substantial portion of his or her time engaged in the diagnosis and treatment of a mental or emotional condition, including alcohol or drug addiction." This definition protects the communications of the patient who seeks treatment for mental disorders from a medical doctor with the expec-

---

[4] Compare Conn. Gen. Stat. § 52-146d (1993) (defining "psychiatrist" as "a person licensed to practice medicine who devotes a substantial portion of his time to the practice of psychiatry, or a person reasonably believed by the patient to be so qualified") and Md. Cts. & Jud. Proc. Code Ann. § 9-1-9 (1989) (same) with Fla. Stat. Ann. § 90.503 & law revision council note (West 1979) (placing psychiatrist-patient privilege and psychologist-patient privilege under a psychotherapist-patient privilege and defining "psychotherapist" to include "[a] person authorized to practice medicine in any state or nation, or reasonably believed by the patient so to be, who is engaged in the diagnosis or treatment of a mental or emotional condition, including alcoholism or other drug addiction"); see also Ala. Code § 34-26-2 (1991) (extending privilege to relations between "licensed psychiatrists" and "clients"); Tenn. Code Ann. § 24-1-207 (Supp. 1994) (protecting communications between a patient and "a licensed physician when practicing as a psychiatrist in the course of and in connection with a therapeutic counseling relationship"); Agnor's Georgia Evidence, § 6-4 at 107 (L. Rumsey 3d ed. 1992) (describing a "psychiatrist" as "a licensed physician engaged in treating a patient for a mental condition").

tation that the communications will be confidential. It acknowledges the absence of a general physician-patient privilege in this state by restricting the privilege to medical doctors who spend a significant amount of time diagnosing and treating mental illness. It is consistent with the cases in this court that have allowed medical doctors to testify as experts about mental conditions, such as the sanity of criminal defendants. Finally, the definition is fair in protecting people who need psychiatric treatment but live in an area of the state not served by a physician who has completed post-graduate training in psychiatry.

It is not necessary at this time to delineate what constitutes a substantial portion of a doctor's time. Like all discovery matters, this determination is a matter within the discretion of the trial court. The trial court in this case found that Dr. Wiles is the doctor to whom the Union County Mental Health Department refers patients for psychiatric treatment. Dr. Wiles testified that she treats one-third of her patients for mental problems, considers counseling as part of her medical practice, and has treated the patient involved in this case for a mental condition for two years. Unlike the family practitioner in *Barnes* who was consulted for a referral to a psychiatrist, Dr. Wiles is a licensed medical doctor who spends a substantial portion of her time treating mental and emotional conditions. Therefore, the trial court did not abuse its discretion in determining that Dr. Wiles' patient is entitled to the benefit of the psychiatrist-patient privilege. We affirm the order of the trial court.

*Judgment affirmed. All the Justices concur, except Hunt, C. J., Carley and Thompson, JJ., who dissent.*

Sears, Justice, concurring.

Within the meaning and spirit of OCGA § 24-9-21 (5), I believe the majority has correctly interpreted the term "psychiatrist." To limit the "psychiatrist-patient" privilege to communications with only those physicians who devote all of their time to the practice of psychiatry, as the dissent urges, would be a disservice to those afflicted with mental and emotional problems, would be contrary to the spirit of the psychiatrist-patient privilege, and would produce unreasonable and inane results.

The stresses of modern life often create debilitating mental and emotional maladies, such as depression, anxiety, insomnia, and addiction, not to mention the host of other painful knots of the mind and soul afflicting many Americans today. Most of these problems are inextricably linked with other physiological problems. When people experience psychological traumas in their lives, the first medical provider to whom many will turn is their personal physician, with whom they have a relationship of trust and confidence. For instance, OB-

GYNs frequently will encounter and treat new mothers with postpartum depression, and internists have similar experiences with alcoholics and drug addicts. In addition, in some rural communities where physicians cannot afford to practice psychiatry exclusively, many physicians by necessity treat the mental disorders of their patients.

Moreover, the practice of psychiatry is open to all physicians upon leaving medical school, and most physicians who do not devote themselves exclusively to the practice of psychiatry nevertheless have the knowledge and skills, gleaned both from medical school and from practice, to treat many of the mental disorders of their patients.

Further, the psychiatrist-patient privilege serves at least two purposes. It recognizes the obvious truth that confidentiality and privileged communication are prerequisites to successful psychiatric treatment and encourages patients to freely and openly communicate their problems. Also, recognizing that there are few things more intimate and private than the health of a person's psyche, the privilege serves to protect that privacy interest. The privilege thus elevates society's interest in successful treatment, as well as the patient's interest in privacy, over society's interest in having such communications, on the few occasions they would be relevant, to aid in the truth-seeking process. See generally McCormick on Evidence, §§ 98; 105 (4th ed. 1992).

Bearing in mind that patients will frequently consult their personal physicians for mental health problems, that those physicians will frequently spend a substantial part of their practice not only treating their patients' injured bodies but treating their injured minds, and that the privilege in question encourages patients to speak freely and openly of their mental health problems and recognizes their privacy interest once they have done so, it makes no sense to deny the privilege to a patient who seeks treatment from a personal physician who has a substantial psychiatric practice but to grant the privilege to a patient who initially decides to seek out a doctor who exclusively practices psychiatry. See *Mansfield v. Pannell*, 261 Ga. 243 (404 SE2d 104) (1991) (statutes should be construed to avoid an absurdity or contradiction and to follow legislative intent). Such a result could only be based on a talismanic reliance on mere words and labels that would be contrary to the spirit of the privilege. As Judge Learned Hand once wrote, "it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish." *Cabell v. Markham*, 148 F2d 737, 739 (2nd Cir. 1945).

Further, to limit the privilege to physicians who practice psychiatry exclusively would lead to the anomalous result that psychologists'

patients[5] would be entitled to greater protection than patients of those medical doctors who are schooled in psychiatry and who engage in the substantial practice thereof. Such a result would also make little sense and is not one I believe the General Assembly could have intended.

For all of the foregoing reasons, I think that the majority has properly construed the psychiatrist-patient privilege, and that that construction is a step forward for those Georgians with mental and emotional problems who are working closely with their doctors in an effort to restore a sense of balance and stability to their lives.

HUNT, Chief Justice, dissenting.

I agree with the dissent of Justice Carley and write separately to emphasize, as Justice Sears points out in her concurrence, that nowadays the general practice of medicine almost always involves a consideration of and treatment of a patient's emotional disorders, as well as those of a physical nature. Treatment for anxiety, depression, and related problems are routine matters for internists such as Dr. Wiles.[6] But that fact does not convert the internist into a psychiatrist any more than the routine treatment of cardiovascular complaints converts the internist into a cardiologist. Rather than voting for the judicial legislation proposed by the majority opinion, I would refer this matter to the General Assembly for its consideration as to whether the statute should be amended so as to protect communications of this sort regardless of the kind of practice engaged in by the person to whom the information is communicated.

CARLEY, Justice, dissenting.

The cardinal rule of statutory construction is to ascertain the legislative intent. Had the General Assembly of Georgia intended to extend the privilege against disclosure to communications between a patient and "a person authorized to practice medicine who devotes a substantial portion of his or her time in the diagnosis or treatment of a mental or emotional condition, including alcohol or drug addiction,"

---

[5] OCGA § 43-39-16 provides that

[t]he confidential relations and communications between a licensed psychologist and client are placed upon the same basis as those provided by law between attorney and client; and nothing in this chapter shall be construed to require any such privileged communication to be disclosed.

[6] "The internist, particularly in this day and age, must enhance his ability to recognize, evaluate, and manage psychiatric problems commonly seen in the practice of medicine. . . . We have accepted the fact that the internist cannot escape from dealing with the practical questions arising from emotional disorders. . . . In many instances, the internist can cope with his patients' emotional problems alone if he is properly aware of their nature and of the therapeutic measures available to him." Preface to *Psychiatry and the Internist* (P. Fink & W. Oaks, 1970).

then presumably it would have enacted a statute which so provides. However, our General Assembly, unlike the legislatures of several other states, has not done so. Instead, it has enacted a statute which extends a privilege against disclosure only to communications between a patient and a "psychiatrist." OCGA § 24-9-21 (5). In my opinion, appellee-defendant Dr. Wiles is not a "psychiatrist." Accordingly, I respectfully dissent to the majority's affirmance of the trial court's denial of appellant-plaintiff Mr. Wiles' motion to compel and grant of appellee's motion to quash the subpoena.

The majority concludes that appellee is a "psychiatrist" simply because she "is a licensed medical doctor who spends a substantial portion of her time treating mental and emotional conditions." Applying the majority's definitional rationale, appellee presumably would also be considered a "cardiologist" if, in her medical practice, she ever had occasion to spend "a substantial portion of her time" treating heart conditions. Likewise she would be considered to be a "dermatologist" if she spent "a substantial portion of her time" treating skin conditions. In my opinion, "psychiatrist," "cardiologist" and "dermatologist," are terms of art denoting that a licensed medical doctor not only spends "a substantial portion of his or her time in the diagnosis and treatment" of certain conditions, but is also a "specialist" in the diagnosis and treatment of certain conditions. "Specialist" is defined as "[a] practitioner who devotes himself [or herself] to a special class of diseases." Dorland's Illustrated Medical Dictionary (24th ed. 1965). "Psychiatry" is that branch of medicine which "deals with the science and practice of treating mental, emotional, or behavioral disorders esp. as originating in endogenous causes or resulting from faulty interpersonal relationships." Webster's Third International Dictionary (1969). Thus, a "psychiatrist" is "a physician specializing in psychiatry. . . ." Webster's Third New International Dictionary (1969).

In the course of her practice, a licensed medical doctor can have occasion to spend "a substantial portion of her time" in any number of branches of medicine and, in her general capacity as a medical "expert," is certainly qualified to give an opinion concerning any of those branches in which she may have done so. See *Petty v. Folsom*, 229 Ga. 477, 481 (2) (192 SE2d 246) (1972); *Henderson v. State*, 157 Ga. App. 621, 623 (4) (278 SE2d 164) (1981). However, unless she also "devotes [herself] to a special class of diseases," she may be a medical "expert," but she can not be considered a "specialist." It is undisputed that appellee is a "specialist." However, her "specialty" is internal medicine, not psychiatry. Thus, notwithstanding appellee's general status as a medical "expert," she is not a "psychiatrist." As an "internist" who also spends "a substantial portion of her time" in the treatment of mental and emotional conditions, appellee's communica-

tions with and from her patients are not privileged within the meaning of OCGA § 24-9-21 (5). By its express terms, that statutory privilege does not extend to communications between a patient and "a physician in any specialty other than psychiatry. [Cits.]" *Barnes v. State*, 171 Ga. App. 478, 482 (3) (320 SE2d 597) (1984).

The majority opinion is ultimately premised solely upon policy considerations that may or may not prompt the General Assembly to follow the lead of other state legislatures which have, by statute, broadened the scope of the "patient-psychiatrist" privilege. However, the authority of the courts is limited to interpreting the existing statutory law as adopted by the legislative branch of government. Our legislature has not enacted any statute establishing a general privilege for patient-physician communications and has limited the privilege to communications between a patient and a "psychiatrist." "Psychiatrist," without more, is a narrow term of art and must be so construed. One of the fundamental rules of statutory construction is that "words of art or words connected with a particular trade or subject matter, . . . shall have the signification attached to them by experts in such trade or with reference to such subject matter." OCGA § 1-3-1 (b). When "psychiatrist" is properly construed as a term of art, appellee is not a "specialist" whose practice is "devoted" to "psychiatry" and communications between her and her patients would not, therefore, be deemed privileged under OCGA § 24-9-21 (5). Accordingly, I must dissent to the majority's affirmance of what I perceive to be erroneous rulings by the trial court.

I am authorized to state that Justice Thompson joins in this dissent.

DECIDED OCTOBER 11, 1994 —
RECONSIDERATION DENIED NOVEMBER 3, 1994.

*Carey, Jarrard & Walker, Daniel L. Parr, Sr.,* for appellant.
*Forrester & Brim, Weymon H. Forrester, Richard C. Bellows,* for appellee.