A02A1096, A02A1097. TRAMMEL et al. v. BRADBERRY et al.; and vice versa.
(568 SE2d 715)

ELDRIDGE, Judge.

This is an interlocutory appeal raising many issues from a personal injury action for negligence in failing to take medication and for an intentional tort for the criminal act of aggravated assault by a person adjudged not guilty by reason of insanity of all criminal acts. In addition, the appeal and cross-appeal contain a number of complex issues involving mental illness and arising from service, discovery, procedure, and substantive law. Thus, a lengthy analysis and factual recitation is necessary.

Horace D. Trammel, Jr. ("Tommy") was sued by Officer B. R. Bradberry, Gwinnett County Police Department, Special Weapons and Tactics, and his wife Elaine for shotgun wounds inflicted on the plaintiff while Trammel was being arrested at his home in Forsyth County on a commitment order from the probate court.

In August 1995, Tommy was hospitalized where he was diag-

nosed and treated for paranoid schizophrenia; when he ceased taking his medication, he was rehospitalized several times under the civil commitment criteria as a danger to himself and others. Tommy had no legal guardian appointed by the probate court.

Again, prior to January 13, 1996, Tommy stopped taking his medication and posed a danger to himself and others requiring his involuntary commitment, which he resisted violently for the first time. On that date, after obtaining a commitment order from the probate court, Horace D. Trammel, Sr. called the Forsyth County Sheriff's Department, requesting assistance in taking Tommy to the hospital and advised Sergeant Al Hurst that Tommy had guns. On several prior occasions the Forsyth County Sheriff's Department had assisted in the hospitalization of Tommy without any violence on the part of either. Sergeant Hurst and Trammel, Sr. went to Tommy's home, but Tommy was absent. Sergeant Hurst informed Trammel, Sr. that he would return later to pick Tommy up.

Returning later, Sergeant Hurst passed Tommy on the highway in his pickup truck, executed a turn, activated his blue lights and siren, and commenced to chase Tommy. Tommy fled, and more sheriff's deputies, a police helicopter, and Georgia State Patrol joined the pursuit. Sergeant Hurst called off the chase, because Tommy was headed home and could be taken into custody there.

A deputy disregarded the order to terminate the chase and cornered Tommy on a dead-end road near Tommy's residence. The deputy confronted Tommy with a drawn gun, firing at him. Tommy pulled a shotgun from his truck and returned fire. Tommy got back into his truck and drove off-road to his house, and the deputies struck the fleeing truck numerous times with their fire.

Tommy arrived home, and the deputies surrounded the house. They requested assistance from Gwinnett County's SWAT unit, of which Bradberry was on call and a responding member. The deputies and the SWAT team opened fire on the house and tried to use tear gas. They had orders to shoot to kill Tommy.

On the morning of January 14, 1996, the law enforcement officers stormed the house after assaulting it with explosives, which set the house on fire. Tommy was shot in the hand, and his shotgun was damaged by gunshots; he surrendered.

During the assault, Bradberry received a gunshot wound; at the time that he was wounded, Bradberry was on the other side of the house from where Tommy was apprehended.

After evaluation by the court-appointed psychiatrist for the state mental health department in the criminal prosecution, Tommy was diagnosed under D.S.M. IV as Delusional Disorder, Mixed Type (Grandiose Type and Persecutory Type) 297.1. On May 28, 1999, Tommy was adjudicated not guilty by reason of insanity by the Supe-

rior Court of Forsyth County as to all criminal acts and ordered confined to the forensic unit of the state mental health facility.

On January 2, 1998, while Tommy was confined in the Forsyth County Jail, Bradberry had Tommy personally served with a copy of a complaint and summons without having a legal guardian or next friend served. During discovery in this civil action, Bradberry sought to obtain Tommy's treatment records. Trammel, Sr. filed a timely answer.

Tommy objected to the discovery of his psychiatric records and refused to waive the privilege under OCGA § 24-9-2. The trial court ruled that there was no privilege since Tommy was committed under court order as not guilty by reason of insanity.

On February 16, 1998, Tommy filed a motion to dismiss for failure to state a claim in lieu of an answer, which was not ruled upon until October 9, 2001. On April 20, 2000, Tommy filed a motion to dismiss for want of service. On May 15, 2000, the Bradberrys amended their complaint.

On March 13, 2000, Trammel, Sr. filed a motion for summary judgment, which was denied. On July 12, 2001, both Trammels filed a motion to dismiss as a sanction for violation of OCGA § 24-9-21. The plaintiffs moved for entry of a default judgment, which was denied.

## Case No. A02A1096

1. The Trammels raise as error that the trial court found that service can be perfected upon an insane person without complying with the statutory requirements of OCGA § 9-11-4 (d) (4) that they assert are required for service on the insane. While this is enumeration of error 8, it should be dealt with first, because it goes to the trial court's personal jurisdiction over Tommy. We do not agree with the Trammels' contention.

Under OCGA § 9-11-4 (e) (4), when a person "has been judicially declared to be of unsound mind or incapable of conducting his own affairs and for whom a guardian has been appointed," then the guardian must be served. The adjudication of unsound mind refers to all classes of mental illness or other conditions under OCGA § 29-5-1 (a) where the probate court determines that a person needs a guardian to handle his affairs and to manage his property. *Shea v. Gehan*, 70 Ga. App. 229, 230-232 (28 SE2d 181) (1943) (probate court has jurisdiction to determine that person needs a guardian because he or she is insane); *Royal Indem. Co. v. Agnew*, 66 Ga. App. 377, 379-380 (18 SE2d 57) (1941) (guardians are appointed for mentally incompetent, insane persons, non compos mentis, deaf and dumb, habitual drunkards, and imbeciles from age or other cause who cannot man-

age their estate). Only the probate court has jurisdiction to determine if a person is civilly incompetent and in need of a guardian of either their person or property or both.[1] *Shea v. Gehan,* supra at 229; *Meadors v. Walden,* 28 Ga. App. 409 (1) (111 SE 227) (1922). To have a guardian appointed does not mean that the person meets the civil criteria for involuntary commitment to a mental hospital; however, involuntary civil commitment would satisfy the need for a guardian to be appointed by the probate court. *Tucker v. American Surety Co. &c.,* 78 Ga. App. 327, 329-330 (1) (50 SE2d 859) (1948). A civil commitment does not act as a procedure to have a guardian appointed, because many psychotic people have no estate to administer.

Thus, Tommy's current and prior commitments to psychiatric hospitals under the civil or criminal commitment criteria would permit the appointment of a guardian for him. However, there is no evidence in the record that Tommy has been adjudicated as incompetent by the probate court and had a guardian appointed. Unless and until there has been an adjudication by the probate court of Tommy's incompetence, OCGA § 9-11-4 (d) (4) does not apply; therefore, any lawful means of service will confer personal jurisdiction over him. *Sellers v. Bell,* 151 Ga. App. 440, 441 (1) (260 SE2d 538) (1979). Thus, personal service on Tommy in the Forsyth County Jail was valid and sufficient to withstand a motion to dismiss. OCGA § 9-11-12 (b) (4), (5).

2. Trammel, Sr. contends that the trial court erred in denying his motion for summary judgment. We agree.

Trammel, Sr. went to the probate court to obtain an order to again involuntarily commit Tommy, because Tommy was off his medication and acting psychotic in that Tommy believed that the Federal Bureau of Investigation, the Georgia Bureau of Investigation, and Governor Zell Miller were lurking outside to kill him. At the time that Trammel, Sr. asked for the assistance of the Forsyth Sheriff's Department in taking Tommy by force for an involuntary commitment to a psychiatric hospital, he knew that Tommy had become a danger to himself and others by stopping his medication. Trammel, Sr. specifically warned Sergeant Hurst that Tommy had guns in his possession. The father did not provide the guns to Tommy nor know where Tommy obtained possession of the guns; however, the record shows that Tommy bought the guns prior to his first commitment and retained possession of them. This indicated both actual knowledge and foreseeability that Tommy could shoot at someone or shoot himself.

---

[1] OCGA § 29-5-1 (b) authorizes the State Board of Workers' Compensation to appoint a guardian for a person entitled to benefits as a workers' compensation claim. Such facts are *not present in this case.*

The general rule that the intervening criminal act[s] of a third person will insulate a defendant from liability for an original act of negligence does not apply when it is alleged that the defendant had reason to anticipate the criminal act. . . . Here, [the person with a special relationship of control may be] liable to third parties because [he] violated [his] duty owed to those third parties to conform to a given standard of conduct.

(Citations and punctuation omitted.) *Bradley Center v. Wessner*, 250 Ga. 199, 202-203 (296 SE2d 693) (1982) (duty of care to third persons when a special relationship based upon physical control exists). Thus,

where the course of treatment of a mental patient involves an exercise of "control" over him by a physician who knows or should know that the patient is likely to cause bodily harm to others, an independent duty arises from that relationship and falls upon the physician to exercise that control with such reasonable care as to prevent harm to others at the hands of the patient. [Cits.]

*Bradley Center v. Wessner*, 161 Ga. App. 576, 581 (1) (287 SE2d 716) (1982), aff'd, 250 Ga. 199, supra.

If a special relationship between Trammel, Sr. and Tommy existed, then it would be because the father had physical control over Tommy; "as far as the scope of a defendant's duty is concerned, it makes no difference if the act of the intervening third party [Tommy] is negligent, intentional, or criminal, for even criminal conduct is often reasonably to be anticipated. 2 Harper & James, The Law of Torts 1144, § 20.5." *Associated Health Systems v. Jones*, 185 Ga. App. 798, 801-802 (1) (366 SE2d 147) (1988) (nursing home liable to an inmate who was savagely beaten in his sleep by his roommate with a history of psychotic violence). When physical control exists through counseling; restriction on possession of weapons, drugs, alcohol, or access to certain areas; management of behavior, movement, or medication; or supervision to protect the person or third parties from the person, such control is indicium of a special relationship, giving rise to liability to third persons for such person's conduct. Id.

The criteria for determining whether a person has a special relationship over another giving them control of such individual with the attendant duties are analogous to when a physician has such special relationship of control over a mental patient. For a physician to be under a special relationship of control of such person so that liability may attach for failure to exercise ordinary care to protect others from

such mental patient, a two-part test must be satisfied: "(1) the physician must have control over the mental patient; and (2) the physician must have known or reasonably should have known that the patient was likely to cause bodily harm to others." *Ermutlu v. McCorkle*, 203 Ga. App. 335, 336 (1) (416 SE2d 792) (1992) (psychiatrist for mentally ill outpatient who killed a third person in a wreck could not legally confine or restrain the patient against her will); accord *Keppler v. Brunson*, 205 Ga. App. 32, 33 (421 SE2d 306) (1992) (no control over a voluntary outpatient who acquiesced in treatment plan). Where the mental patient entered into voluntary treatment with a physician as an outpatient,

> [the physician] had no control of [the patient] in the sense that [he] could claim legal authority to confine or restrain [him] against [his] will unless [he] met the criteria for involuntary commitment set forth in OCGA § 37-3-1 (9.1). Thus, if [the patient] had not acquiesced in the treatment plan prescribed by [the physician], he could not have unilaterally imposed the treatment plan upon [the patient] except in the most extraordinary circumstances. OCGA § 37-3-163. This court has previously held in order for [the] duty to control to arise, the physician must be able to exercise control over the freedom of a mental patient or claim the legal authority to confine or restrain the patient against his will.

(Citations and punctuation omitted.) *Ermutlu v. McCorkle*, supra at 337 (1); accord *Keppler v. Brunson*, supra at 32-33; see also *Baldwin v. Hosp. Auth. of Fulton County*, 191 Ga. App. 787, 789 (2) (383 SE2d 154) (1989). Thus, absent being appointed the legal guardian of the person, there must be evidence of actual assumption of physical control as well as knowledge of the danger the person poses to others if the control is not reasonably maintained.

Trammel, Sr. knew that Tommy was diagnosed and treated for paranoid schizophrenia; that Tommy was not taking his medication; that he had been hospitalized on several occasions when he did not take his medication, because Tommy was a danger to himself and others and was in need of hospitalization immediately; and that Tommy had firearms, making him dangerous. Thus, Trammel, Sr.'s knowledge of Tommy's dangerous nature satisfied the second part of the analysis. See *Baldwin v. Hosp. Auth. of Fulton County*, supra at 789-790 (lack of knowledge of substantial risk of imminent harm); accord *Keppler v. Brunson*, supra at 33. The remaining question raised by the evidence was did Trammel, Sr. have actual control over Tommy to satisfy the first part of the test?

The facts and circumstances of this case fail to create a factual

question for resolution by the jury as to whether Trammel, Sr. had assumed control of his mentally ill son, Tommy, in a special relationship.[2] Trammel, Sr. did not have Tommy in his physical custody, did not take charge of Tommy, and could not restrain or force Tommy to take his medication. The father had to go to the probate court to obtain an involuntary committal order and then have the sheriff enforce the order, demonstrating his lack of physical control. The plaintiffs seek to find control arising from the ownership of the dwelling, furnishing Tommy a truck, and allowing him to cut wood to sell, because the father at any time could have conditioned the son's staying in the house owned by the father and uncle on the surrender of the guns. However, this is not the control envisioned under the law; otherwise, every parent, owner of realty, or landlord would find themselves in a special relationship of control with an adult living under their roof. Here, the father merely provided Tommy with a free place to live, which does not create either the right or exercise of physical control over the behavior of a mentally ill person necessary to create the special relationship. Thus, summary judgment should have been granted to Trammel, Sr. *Baldwin v. Hosp. Auth. of Fulton County*, supra at 789-790; *Keppler v. Brunson*, supra at 33.

3. The Trammels contend that the trial court erred in ruling that OCGA § 45-9-81 requires that the law enforcement officer receive additional compensation from the requesting authority in addition to his regular pay from his own department for the fireman's rule to apply and that if a police officer goes to assist another police agency that OCGA § 45-9-81 does not apply. We do not agree.

Under OCGA § 45-9-80 et seq., this statute provides for indemnification for death of a law enforcement officer killed on active duty or "attempting to enforce . . . the criminal . . . laws preserving or attempting to preserve public order." OCGA § 45-9-81 (5) (c). This act provides for additional compensation to the beneficiaries of a law enforcement officer killed in the line of duty. However, this statute is

---

[2] *Bradley Center v. Wessner*, supra, 250 Ga. at 201-202, adopted with approval Restatement (Second) of Torts, §§ 315-319, which deals with liability for the conduct of a third person in a special relationship under their control. "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." *Bradley Center v. Wessner*, supra, 250 Ga. at 201-202. Restatement (Second) of Torts, § 315 states: "[t]here is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct." *Bradley Center v. Wessner*, supra, 250 Ga. at 201-202; *Cechman v. Travis*, 202 Ga. App. 255, 258 (2) (414 SE2d 282) (1991); *Associated Health Systems v. Jones*, supra at 801 (1). A special relationship sufficient to give rise to a duty of care arises when the person in custody is a dangerous person, which is known by the person in control. *Bradley Center v. Wessner*, supra, 250 Ga. at 201-202; Restatement (Second) of Torts, § 319.

inapplicable to the facts of this case, because there is no issue that Bradberry was a law enforcement officer, was off duty at the time of the occurrence, was seeking to enforce the criminal laws, and survived his gunshot wound.

Trammel raised as a defense the fireman's rule, which we have held also applies to peace officers. Simply stated "that while a fireman may recover for negligence independent of the fire, a landowner is not liable for negligence in causing the fire. [O]ne cannot complain of negligence in the creation of the very occasion for his engagement." (Citation and punctuation omitted.) *Martin v. Gaither*, 219 Ga. App. 646, 647 (466 SE2d 621) (1995). Put another way

> the fireman's rule has been viewed as adopted in Georgia, broadly construed to cover tortfeasors other than those whose acts prompted the presence of the fireman at the place of injury, narrowly construed to exclude subsequent or extrinsic acts of negligence other than the initial reason for the fireman's professional presence, and . . . , broadly construed to apply to "public safety employee(s)" including police officers.

Id. at 650. Thus, the fireman's rule does not apply to negligence that causes the presence of the fireman or law enforcement officer to deal with the occurrence, but applies only to prior negligence in maintaining the premises and subsequent negligence.

> Thus, the fireman's rule has been viewed as adopted in Georgia, broadly construed to cover tortfeasors other than those whose acts prompted the presence of the fireman at the place of injury, narrowly construed to exclude subsequent or extrinsic acts of negligence other than the initial reason for the fireman's professional presence, and in dicta, broadly construed to apply to "public safety employee(s)" including police officers. We hold that it does include them.

Id. Pretermitting that the plaintiff was off duty but voluntarily responded to a law enforcement siege, the fireman's rule only applies to negligent conduct other than the conduct causing the law enforcement person to respond and not wilful and wanton acts or intentional torts; since Trammel, Sr. is no longer a party charged with negligence and Tommy's negligence was in not taking his medication, causing his psychotic symptoms, then the fireman's rule is not a defense available to Tommy for intentional or wilful and wanton acts or the negligent causing of the occurrence by not taking his medication. *Gaither v. MARTA*, 235 Ga. App. 603, 606 (510 SE2d 342) (1998).

4. The Trammels contend that the trial court erred in ruling that when a police officer goes to assist another police agency, the doctrine of assumption of risk does not apply.

> The reason the fireman's rule did not apply in *McClelland v. Riffle*[, 970 FSupp. 1053 (S.D. Ga. 1997),] was because the defendant's injury-causing acts constituted wilful and wanton misconduct, which [is] not excepted from liability by the [fireman's] rule. A firefighter's or police officer's job does not include assuming the general risk of harm from a person's wilful and wanton or malicious conduct. The court in *McClelland* honored that.

*Gaither v. MARTA*, supra at 606.

However, as to the defense of assumption of risk outside the fireman's rule for negligence, other than negligence in causing the occurrence, where the facts and circumstances make the defense of assumption of risk applicable, such defense can bar recovery for wilful or wanton torts as well as negligence. *Muldovan v. McEachern*, 271 Ga. 805, 808-809 (2) (523 SE2d 566) (1999). Whether Tommy's intentional torts superseded his negligent failure to take his medication as the supervening proximate cause of plaintiffs' damages, because Tommy should have foreseen that stopping medication would bring on a paranoid delusion of persecution, in which he believed that law enforcement personnel were out to kill him and foreseeably could shoot a third person, is an issue for jury determination.

> In Georgia, a defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks. Knowledge of the risk is the watchword of assumption of the risk, and means both *actual* and *subjective* knowledge on the plaintiff's part. The knowledge that a plaintiff who assumes a risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury. As recently stated by [the Supreme] Court: In its simplest and primary sense, assumption of the risk means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from *a known risk arising from what the defendant is to do or leave undone.* . . . [T]he

plaintiff may assume the risk where the conduct of the defendant is wilful or wanton.

(Punctuation and footnotes omitted; emphasis in original.) Id. at 807-809 (2) (quoting from *Vaughn v. Pleasent*, 266 Ga. 862, 864 (471 SE2d 866) (1996)).

Thus, the trial court did not err in leaving the determination of the actual and subjective knowledge to a jury determination.

5. The Trammels contend that the trial court erred in ruling that where the plaintiff is operating under orders to shoot to kill Tommy and invades Tommy's home that the plaintiff is not protected by the rescue doctrine. Whether or not the rescue doctrine is applicable is a mixed question of law and fact for jury determination.

If the plaintiff was shot by Tommy, then the rescue doctrine has no application, because the plaintiff was wounded not as a result of Tommy's negligence but intentional act; however, if the plaintiff was wounded by another officer as a result of Tommy's negligent failure to surrender, causing the storming of the house, then Tommy's negligence was a concurrent proximate cause of plaintiff's injury and the rescue doctrine may apply. If Tommy had failed to take his medication, was wounded, disabled, or suffering from a psychotic state that incapacitated him but had not negligently earlier surrendered, then it was reasonably foreseeable that an attempt to rescue him would be coupled with an attempt to kill him if he resisted with further deadly force.

> The doctrine of rescue, as deduced from a series of Georgia cases, may be stated as follows: Where a defendant's negligent act, of commission or omission, has created a condition or situation which involves urgent and imminent peril and danger, to life or property, of himself or of others, those acts of negligence are also negligence in relationship to all others who, in the exercise of ordinary care for their own safety under the circumstances, short of rashness and recklessness, may attempt, successfully or otherwise, to rescue such endangered life or property, by any means reasonably appropriate to the purpose; and insofar as the proximate cause of any injuries that a rescuer sustains as a result of his efforts is concerned, the chain of causation remains intact, since it is reasonably to be anticipated that, once such peril to life or property is initiated and brought into being by the negligence of a defendant, reasonable attempts will be undertaken to alleviate and nullify the consequences of such peril. . . . There is no issue involved as to assumption of risk, since the doctrine of rescue necessarily contem-

plates an assumption of the risk inherent in the peril created by the defendants' negligence and allows recovery for injuries thereby incurred, for the reason that the defendants were charged with the foreseeability of their negligence attracting rescuers to assume the risks.

*Walker Hauling Co. v. Johnson,* 110 Ga. App. 620, 624-625 (139 SE2d 496) (1964). If Tommy's conduct was negligent and if the plaintiff was acting as a volunteer and not as an off-duty police officer seeking to arrest a criminal for felonies committed in his presence, then the rescue doctrine and not the fireman's rule would apply. *Bycom Corp. v. White,* 187 Ga. App. 759, 762 (1) (371 SE2d 233) (1988) (dealing with a volunteer firefighter who did not come within the fireman's rule, because of his volunteer status). Generally, the duty owed to a volunteer is not to wilfully or wantonly injure him after his presence is known. *Huddle House v. Burke,* 133 Ga. App. 643, 647 (211 SE2d 903) (1974). But, under the facts of this case, the evidence raises the issue of wilful and wanton conduct or gross negligence at the least.

However, if Tommy's conduct was negligent when the law enforcement officers stormed his house, then the plaintiff was acting in the capacity of a law enforcement officer at such time and not as a volunteer, because an off-duty officer is always on duty when a crime is committed in his presence; therefore, the plaintiff would not be a volunteer. See generally *Wilson v. Waffle House,* 235 Ga. App. 539 (510 SE2d 105) (1998) (policeman in uniform working off-duty security performing police duties when crime occurs); *Sommerfield v. Blue Cross &c.,* 235 Ga. App. 375 (509 SE2d 100) (1998) (off-duty policeman in uniform directing traffic performing police duties when a crime occurs); *Tate v. State,* 198 Ga. App. 276, 278 (4) (401 SE2d 549) (1991) (off-duty officer in uniform performing official duties as security when a crime occurs); *Duncan v. State,* 163 Ga. App. 148 (1) (294 SE2d 365) (1982) (same).

6. Tommy contends that the trial court erred in ruling that he lost his privilege under OCGA § 24-9-21 by involuntary commitment to a state mental health facility in that he was found not guilty by reason of insanity. We do not agree, because there are several reasons why such statutory privilege was waived.

A sharp distinction must be drawn between the civil commitment for evaluation or involuntary commitment by the probate court under OCGA §§ 37-3-1 et seq. (mental illness), 37-4-1 et seq. (mental retardation), and 37-7-1 et seq. (alcohol and drugs), and a forensic involuntary commitment under OCGA § 17-7-130 (a special plea of insanity or mental retardation to stand trial), § 17-7-130.1 (evaluation and psychiatric/psychologist evidence), § 17-7-131 (a general plea of insanity or retardation at the time of the offense), or § 17-10-

60 et seq. (mental status for purpose of execution) by a superior court and any evidence of prior psychiatric or mental health treatment introduced as part of any forensic mental status determination. As to civil commitment or treatment by psychiatrist, psychologist, or counselor, the absolute privilege of OCGA § 24-9-21 applies except when waived by the patient alone. *Wiles v. Wiles*, 264 Ga. 594, 595-596 (1) (448 SE2d 681) (1994) (physician engaged in psychotherapy comes within privilege); *Kimble v. Kimble*, 240 Ga. 100, 101 (1) (239 SE2d 676) (1977) (psychiatrist-patient relationship existed); *Wilson v. Bonner*, 166 Ga. App. 9, 16-17 (5) (303 SE2d 134) (1983) (psychiatrist-patient communications privileged so that deposition of psychiatrist could not be used).

Where the psychiatrist or mental health worker is consulted for evaluation and testimony rather than treatment or appointed by the court for such purpose, no privileged relationship arises that is protected under the Act. *Christenson v. State*, 261 Ga. 80, 83-84 (2) (d) (402 SE2d 41) (1991) (criminal defendant sent by court for evaluation, no patient-psychiatrist relationship); *Kimble v. Kimble*, supra at 100-101; *Massey v. State*, 226 Ga. 703, 704-705 (4) (177 SE2d 79) (1970) (court-appointed psychiatrist for evaluation is outside the privilege, because there is no psychiatrist-patient relationship); *Fulbright v. State*, 194 Ga. App. 827 (1) (392 SE2d 298) (1990) (where a psychiatrist was retained for evaluation and testimony and not for treatment, no privileged relationship arises).

A special plea of insanity or retardation causes a special proceeding of a civil nature where the defendant has the burden of proof of such condition by proof beyond a reasonable doubt. *Clark v. State*, 245 Ga. 629, 630-631 (1) (266 SE2d 466) (1980) (trial court retains jurisdiction over person found not guilty by reason of insanity to determine when he or she no longer meets the civil criteria for commitment); *Smalls v. State*, 153 Ga. App. 254, 256-257 (1) (265 SE2d 83) (1980) (determination of mental competency to stand trial). Any evidence introduced in court on such forensic issues would result in a waiver of such privileged evidence if there existed a patient-psychiatrist treatment relationship.

Where a person is adjudged not guilty by reason of insanity, not capable of standing trial by reason of insanity, or guilty but mentally ill, and committed by court order to a forensic unit of a state mental health institution for treatment, such treatment records and testimony are not privileged, because the trial court, the State, and the defense must have access to these records and testimony to monitor and determine if and under what conditions the person can be released under the civil criteria or stand criminal trial. OCGA §§ 17-7-130; 17-7-131 (d), (e), (f), (g), (h), (i); *Logan v. State*, 256 Ga. 664, 665-666 (352 SE2d 567) (1987) (effect of a plea of guilty but mentally

ill); *Clark v. State*, supra at 630-631 (rights of person found not guilty by reason of insanity and committed to a mental hospital as to release when civil criteria no longer met).

In either a civil or criminal case, where the defense of insanity, retardation, or diminished capacity is raised, putting the defendant's mental capacity in issue, such affirmative defense waives the privilege under OCGA § 24-9-21 (5) through (8). See generally *Kennestone Hosp. v. Hopson*, 273 Ga. 145, 148 (538 SE2d 742) (2000) (failure to object to discovery does not waive psychiatric privilege); *Nance v. State*, 272 Ga. 217, 218-219 (2) (526 SE2d 560) (2000) (raising mental status in sentencing phase as mitigation waives the psychiatric privilege and Fifth Amendment); *Hicks v. State*, 256 Ga. 715, 721-722 (14) (352 SE2d 762) (1987) (privilege waiver by plea of insanity as to examination by court-appointed expert and as to Fifth Amendment). The reason for such policy of waiver is that a fair balance between parties is demanded so that the courts may ascertain the truth; otherwise, "the defense [of] psychiatric testimony without [the opposite party's] own psychiatric examination of the [defendant and access to his prior psychiatric records] and by the need to prevent fraudulent mental defenses" would cause a privilege shield and an offensive weapon for injustice. (Citations and punctuation omitted.) *Nance v. State*, supra at 219 (2).

Where a party calls his or her psychiatrist to testify at trial on the party's behalf, when the mental status of the party is in issue, this constitutes decisive, unequivocal conduct that reasonably implies the intent to waive the psychiatric privilege. *Wiles v. Wiles*, supra at 596 (1); *Sims v. State*, 251 Ga. 877, 881-882 (311 SE2d 161) (1984); *Griggs v. State*, 241 Ga. 317, 318-319 (3) (245 SE2d 269) (1978); *Fields v. State*, 221 Ga. 307, 308-309 (2) (144 SE2d 339) (1965); accord *Kennestone Hosp. v. Hopson*, supra at 148.

However, the psychiatric privilege is not waived as to all treating psychiatrists by the testimony of the psychiatrist hired by the police officer-witness' employer through his testimony in the workers' compensation hearing; the police officer suffered from post-traumatic stress disorder after being shot and her partner killed and underwent psychiatric treatment, arising from being shot during the crime being prosecuted. The workers' compensation psychiatrist testified at her compensation hearing and at the criminal trial as a defense witness on the mental status of the officer. The police officer had not waived her psychiatric privilege as to her other personal psychiatrist, who never testified, by having the workers' compensation psychiatrist testify either at the criminal trial or the compensation hearing. *Bobo v. State*, 256 Ga. 357, 358 (2) (349 SE2d 690) (1986) (the personal psychiatrist who did not testify was privileged and his testimony was cumulative); cf. *Kennestone Hosp. v. Hopson*, supra at 148.

The privilege does not end with the death of the person with the privilege. *Boggess v. Aetna Life Ins. Co.*, 128 Ga. App. 190, 191-192 (2) (196 SE2d 172) (1973); see for general discussion as to discovery of hospital psychiatric records and waiver of psychiatric privilege *Hopson v. Kennestone Hosp.*, 241 Ga. App. 829, 831 (526 SE2d 622) (1999) (psychiatric records for drug and alcohol treatment excluded from discovery by statute).

7. Tommy contends that the trial court erred in denying his motion for summary judgment because an insane person cannot be liable for a tort. We do not agree.

A delusional compulsion, although it is a defense in criminal law, is not a defense to a civil tort action. Thus, OCGA § 16-3-3, a criminal statute, states: "[a] person shall not be found guilty of a crime when, at the time of the act, omission, or negligence constituting the crime, the person, because of mental disease, injury, or congenital deficiency, acted as he did because of a delusional compulsion as to such act which overmastered his will to resist committing the crime." See *Continental Cas. Co. v. Parker*, 167 Ga. App. 859, 860 (1) (307 SE2d 744) (1983). However, factual issues exist as to whether or not paranoid schizophrenia is a delusional compulsion and whether or not Tommy had the mental capacity to formulate an intent to commit an intentional tort.

> A [psychotic person] is not responsible for crime, because he is not a free agent, capable of intelligent voluntary action, and therefore is incapable of a guilty intent; but in a civil action for an injury done to the person or property of another, the intent is generally immaterial, and the rule is that an insane person is liable for his torts the same as a sane person, except for those torts in which malice, and therefore intention, is a necessary ingredient. In respect to this liability there is no distinction between torts of nonfeasance and of misfeasance; and consequently an insane person is liable for injuries caused by his tortious negligence. Insane persons are held to this liability on the principle that where a loss must be borne by one of two innocent persons, it shall be borne by him who occasioned it.

(Citations and punctuation omitted.) *Central of Ga. R. Co. v. Hall*, 124 Ga. 322, 332-333 (52 SE 679) (1905); accord as to intentional torts *State Farm Fire &c. Co. v. Morgan*, 185 Ga. App. 377, 379-380 (2) (364 SE2d 62) (1987); *Continental Cas. Co. v. Parker*, supra at 860 (1); *Sauers v. Sack*, 34 Ga. App. 748, hn. 1 (131 SE 98) (1925).

Thus, it is a factual question whether the plaintiffs' injuries were caused by Tommy's negligence in not taking his medication and not surrendering or caused by an intentional tort.

8. Trammel, Sr. contends that the trial court erred in ruling that a parent of an adult child can be held liable for the criminal acts of his grown son. Division 2 renders this enumeration moot.

*Case No. A02A1097*

9. Plaintiffs contend that the trial court erred in denying plaintiffs' motion for default judgment against Tommy. We do not agree.

Tommy filed a motion to dismiss for failure to state a claim, which timely raised the defense of avoidance by reason of insanity and which is an admission in judicio of the facts. Such response sufficiently advised the plaintiffs of the sole affirmative defense and admitted all the well-pled facts so as to constitute an answer. OCGA §§ 9-11-8 (b), (c); 9-11-12 (a); *M & M Mobile Homes of Ga. v. Haralson*, 233 Ga. App. 749, 750-751 (1) (505 SE2d 249) (1998) (physical precedent only) (a filed letter, served on opposite counsel, that answered specifically each averment constituted an answer); *Robinson v. Rearden*, 134 Ga. App. 815, 816 (216 SE2d 370) (1975) (a short pro se answer denying the note was sufficient); *Knickerbocker Tax Systems v. Texaco*, 130 Ga. App. 383, 384-385 (2) (203 SE2d 290) (1973) (physical precedent only) (a simple two-paragraph answer that denied all the contentions of the complaint was sufficient), overruled on other grounds, *Eckles v. Atlanta Technology Group*, 267 Ga. 801 (485 SE2d 22) (1997) (physical precedent only). Thus, the motion served all the functions of an answer under the liberal provisions of the Civil Practice Act, i.e., admitting all well-pled allegations and asserting the defense in avoidance of liability by reason of insanity, by informing the plaintiffs with sufficient definiteness of the defense. Id. If the motion is treated as an answer, then it provides something that can be amended; although Tommy has not chosen to amend his answer. OCGA § 9-11-15 (a); see *Knickerbocker Tax Systems v. Texaco*, supra at 385 (3). Further, the plaintiffs have amended their complaint to set forth the theory of negligence by Tommy's failing to take his medication, resulting in the onset of his clinical symptoms. Such amendment to the complaint asserting negligence gives Tommy the right to respond but not the duty to further answer; when a complaint is amended, there is no duty to answer further, and defendant is deemed to deny it. *Adams v. Wright*, 162 Ga. App. 550, 551 (1) (293 SE2d 446) (1982); *Diaz v. First Nat. Bank &c.*, 144 Ga. App. 582, 583 (2) (241 SE2d 467) (1978).

*Judgment affirmed in part and reversed in part in Case No. A02A1096. Judgment affirmed in Case No. A02A1097. Smith, P. J., and Ellington, J., concur in judgment only.*

DECIDED MAY 31, 2002 —
RECONSIDERATION DENIED JULY 9, 2002 

*Clifford H. Hardwick*, for appellants.

*Winburn, Lewis & Barrow, Gene M. Winburn, John J. Barrow, Gambrell & Stolz, Irwin W. Stolz, Jr.*, for appellees.