A89A0788. BALDWIN v. HOSPITAL AUTHORITY OF FULTON COUNTY et al.

(383 SE2d 154)

BANKE, Presiding Judge.

The appellant, by next friends, filed this wrongful death action against the Hospital Authority of Fulton County d/b/a Northside Hospital, the Hospital Authority of Gwinnett County d/b/a Joan Glancy Memorial Hospital, and John R. Nisbet, M. D., seeking to recover damages for their alleged negligence in failing to foresee and prevent the fatal shooting of his (the appellant's) mother by his father. The case is before us on appeal from the grant of the defendant-appellees' motions for summary judgment. *Held*:

1. In certain companion litigation against these same appellee-defendants arising from the same shooting incident and characterized by the same procedural history as the present case, we held that the defendants were entitled to summary judgment due to a procedural error on the part of the plaintiffs in attempting to pursue their claims as renewal actions pursuant to OCGA §§ 9-2-61 (a) and 9-11-41 (d). See *Gober v. Nisbet*, 186 Ga. App. 264 (367 SE2d 68) (1988); *Gober v. Hosp. Auth. of Gwinnett County*, 191 Ga. App. 498 (__ SE2d __) (1989). For the reasons stated in the foregoing decisions, we hold that the trial court also acted properly in granting summary judgment to the appellee-defendants in the present action.

2. The trial court additionally ruled in the present case, as it did in at least one of the previous cases, that the defendants were entitled to summary judgment on the merits. Taking into consideration the considerable investment of time and resources which has quite evidently been made in this litigation both by the litigants and by the two trial courts which have been involved in it, and wishing to avoid the impression that we have foreclosed consideration of an otherwise meritorious claim or claims based purely on the commission of a technical error by appellant's counsel, we deem it appropriate also to address this second aspect of the lower court's judgment in this case.

The appellant's father, Mark Baldwin, shot and killed the appellant's mother at a restaurant where the latter worked as a waitress. (In the process he also killed a bystander who happened to be present in the restaurant as a customer, and it was that killing which gave rise to the litigation in *Gober v. Nisbet*, supra, and *Gober v. Hosp. Auth. of Gwinnett County*, supra.) The day prior to the shooting, Baldwin had been brought to Shallowford Hospital for medical treatment following an attempted suicide by drug overdose — his second suicide attempt in five months. Baldwin was examined at Shallowford, which is a private hospital, and then transferred by ambulance to appellee Joan Glancy Hospital, which is a public hospital. Accompanying him in the ambulance was an "Emergency Admission — Physician's Cer-

tificate and Report of Peace Officer" (also known as a "Form 1013"), which had been executed by the attending physician at Shallowford. This certificate contained the following printed language: "In my opinion [Mark Baldwin] appears to be a mentally ill person requiring involuntary treatment in that he appears to be mentally ill AND (a) appears to present a substantial risk of imminent harm to himself or others as manifested by either recent overt acts or recent expressed threats of violence which present a probability of physical injury to himself or to other persons, or (b) appears to be so unable to care for his own physical health and safety as to create an imminently life-endangering crisis. My opinion is based on the following observations:" Appearing immediately after this language was a blank space containing the following handwritten notation: "2d suicide attempt[.] [S]tate[s] that he *must* kill himself so that people will not hurt him." (Emphasis from original.)

The "Form 1013" was directed "To Emergency Receiving Facility known as GMHI and to the Peace Officer." It specified that "[u]pon receipt . . . the peace officer shall make diligent efforts to take the above-named person into custody as soon as possible [and shall thereafter] transport the above-named person to the emergency receiving facility serving the county where such person was found." See generally OCGA § 37-3-41. However, it does not appear that the certificate was ever presented to a peace officer or that Baldwin was ever taken to an emergency receiving facility. One possible explanation for this is that the attending physician also executed the following handwritten qualification in conjunction with the form: "The 1013 enclosed is to be executed after medical clearance and *if* no private mental health facilities are found." (Emphasis from original.)

Baldwin was admitted to Joan Glancy Hospital, which has no psychiatric unit, and while there received medical treatment for his drug overdose under the care and direction of appellee Dr. John R. Nisbet. He was discharged the following day and was immediately transported by his mother and sister to appellee Northside Hospital for a mental evaluation. Baldwin had been previously hospitalized at Northside for psychiatric treatment following his first suicide attempt some five months earlier, and his sister was under the impression that arrangements had been made by Dr. Nisbet for Baldwin to receive such treatment there on this occasion. However, Northside refused to admit him, apparently because he lacked the financial resources to pay for such treatment and was not a resident of the hospital's indigent treatment service area. After leaving Northside, Baldwin's mother and sister sought to have him admitted to another hospital in the vicinity but again were unsuccessful. They then returned home with him with the intention of taking him to a hospital in Gainesville. Apparently, however, they departed for Gainesville in a separate car,

expecting him to follow. At this time, Baldwin obtained a loaded pistol and proceeded to his wife's place of employment, where he committed the fatal shootings.

The appellant seeks to recover from the appellee-defendants pursuant to the theory of liability announced in *Bradley Center v. Wessner*, 250 Ga. 199 (296 SE2d 693) (1982). In that case, the Georgia Supreme Court affirmed the holding of this court in *Bradley Center v. Wessner*, 161 Ga. App. 576, 581 (287 SE2d 716) (1982), that "where the course of treatment of a mental patient involves an exercise of 'control' over him by a physician who knows or should know that the patient is likely to cause bodily harm to others, an independent duty arises from that relationship and falls upon the physician to exercise that control with such reasonable care as to prevent harm to others at the hands of the patient."

The patient in the *Bradley Center* case had shot and killed his wife and her lover upon being released from a private mental hospital on an unrestricted weekend pass. Prior to such release, the patient had made statements to the hospital's staff revealing his intention to cause bodily harm to his wife if afforded the opportunity. Although he had been admitted to the hospital on a voluntary basis, he had, by the terms of the hospital's voluntary admission program, agreed to certain restrictions on his activity and mobility; and the hospital was authorized pursuant to these restrictions to detain him for 48 hours in the event he sought discharge against medical advice. The Supreme Court held that under these circumstances the hospital could be held liable for the wife's death under the theory set forth in § 315 of the Restatement, Torts, 2d, which recognizes the following exception to the general rule that there is no duty to control the conduct of third persons to prevent them from causing physical harm to others: " 'One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.' " Id. 250 Ga. at 201-2.

We agree with the trial court that the *Bradley Center* theory of liability is not applicable under the circumstances of the present case. Unlike the hospital in the *Bradley Center* case, none of the defendants in the present case ever had "control" of the patient in the sense that they could claim the legal authority to confine or restrain him against his will. (Even assuming arguendo that the qualified committal certificate would have authorized Baldwin's involuntary confinement at an "emergency receiving facility," there has been no suggestion that either Joan Glancy Hospital or Northside Hospital was such a facility.) Additionally, and more importantly, it is undisputed that during the entire period between his arrival at Shallowford Hospital and his departure from Northside the following day, Baldwin had not

harmed or threatened to harm anyone other than himself, nor had he previously expressed to his mother or sister an intention to harm anyone else. Although the printed language in the Form 1013 specified that Baldwin presented a substantial risk of imminent harm "to himself or others," it is apparent from the handwritten language that what prompted the execution of the form was Baldwin's threat to commit suicide. Thus, in contrast to the *Bradley Center* case, there is no basis upon which any of the defendants in the present case can reasonably be charged with the breach of a duty to foresee and prevent an injury to third persons. Under the circumstances, the affidavit submitted by the appellant's expert to the effect that the appellees were guilty of professional malpractice in their handling and treatment of Baldwin establishes no basis for a recovery against them by anyone other than Baldwin himself. Cf. *Clanton v. Von Haam*, 177 Ga. App. 694 (340 SE2d 627) (1986). We accordingly conclude that the trial court did not err in granting summary judgment to the appellees with respect to the merits of the appellant's claim. Cf. *Roberts v. Grigsby*, 177 Ga. App. 377 (339 SE2d 633) (1985).

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED MAY 23, 1989 —
REHEARING DENIED JUNE 5, 1989.

*Butler, Wooten, Overby & Cheeley, James E. Butler, Jr., Mary L. Keener, Jeri L. Kagel*, for appellant.

*Long, Weinberg, Ansley & Wheeler, Robert G. Tanner, Hart & Sullivan, Terrance C. Sullivan, Timothy H. Bendin, Blasingame, Burch, Garrard & Bryant, James B. Matthews III, Gary B. Blasingame*, for appellees.