## A91A1938. ERMUTLU v. McCORKLE et al.

(416 SE2d 792)

POPE, Judge.

Plaintiffs/appellees brought a negligence action against defendant/appellant Ilhan Ermutlu, M.D., a psychiatrist employed by the North DeKalb Mental Health Center, seeking damages for the wrongful death of their daughter Lisa L. McCorkle. The trial court denied defendant's motion for summary judgment, and this appeal follows our grant of the defendant's application for interlocutory review of the trial court's order.

Camille Watkins was a patient of Dr. Ermutlu who had been treated by the doctor on an outpatient basis since June of 1986. Prior to her becoming a patient of Dr. Ermutlu, Mrs. Watkins had a history of mental illness for which she had, for the most part, received continuous treatment since the illness' onset in 1964. Occasionally she would have cyclical relapses which were either treated by an increase in the dosage of her medication or hospitalization. Her last hospitalization had been in 1984. In between inpatient hospitalizations, Mrs. Watkins was stabilized to the extent that she could function at home provided she complied with her medication schedule. Mrs. Watkins' mental condition had never affected her coordination, mental acuity or ability to concentrate, nor had she ever been involved in an accident or received a traffic ticket. Mrs. Watkins was also taking medication for diabetes, and had available to her pain medication for discomfort caused by a herniated disc.

On June 29, 1988, around 3:00 in the morning, Mrs. Watkins went outside her home and began singing and lecturing her neighbors about her relationship with her husband. Later that day, her husband took her to see Dr. Ermutlu at the North DeKalb Mental Health Center who determined that Mrs. Watkins had experienced a manic episode. Based upon his past experience with Mrs. Watkins, Dr. Ermutlu prescribed an increase in the dosage of her medication. Because Mrs. Watkins did not express any suicidal or homicidal ideations, Dr. Ermutlu did not believe her to present a substantial risk of imminent harm to herself or others so he sent her home with her husband. The medical expert witnesses of record are in agreement that Mrs. Watkins' mental status at the time of her appointment with Dr. Ermutlu did not meet the criteria for involuntary commitment set forth in OCGA § 37-3-1 (9.1).

On July 1, 1988, two days after her manic episode and her appointment with Dr. Ermutlu, Mrs. Watkins left her home in her automobile to run some errands. At approximately 12:45 p.m., while driving at an excessive speed in the turn lane of Roswell Road, Mrs. Watkins drove her vehicle into the rear of a vehicle being driven by 21-year-old Lisa McCorkle, killing Ms. McCorkle and Mrs. Watkins

instantly. The evidence indicates that immediately preceding the fatal accident, Mrs. Watkins had been involved in a hit and run accident on Roswell Road. Neither of the medical expert witnesses nor Dr. Ermutlu could offer an opinion as to what caused Mrs. Watkins' behavior or whether the fatal accident was caused by or even related to her mental illness.

1. To state a cause of action for negligence in Georgia, the following elements are essential: "(1) [a] legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty. [Cit.]" *Lee Street Auto Sales v. Warren,* 102 Ga. App. 345, 347 (1) (116 SE2d 243) (1960).

In regard to the first element, the plaintiffs seek to recover from Dr. Ermutlu pursuant to the theory of liability set forth in *Bradley Center v. Wessner,* 250 Ga. 199, 200 (296 SE2d 693) (1982), in which the Georgia Supreme Court affirmed the holding of this court in *Bradley Center v. Wessner,* 161 Ga. App. 576, 581 (287 SE2d 716) (1982) that while, as a general rule, there is no duty to control the conduct of third persons to prevent them from causing harm to others, " 'where the course of treatment of a mental patient involves an exercise of "control" over him by a physician who knows or should know that the patient is likely to cause bodily harm to others, an independent duty arises from that relationship and falls upon the physician to exercise that control with such reasonable care as to prevent harm to others at the hands of the patient.' " Thus, under *Bradley Center,* a two-part test has been established for determining under what circumstances a physician may be liable to a third party: (1) the physician must have control over the mental patient; and (2) the physician must have known or reasonably should have known that the patient was likely to cause bodily harm to others. *Bradley Center,* 161 Ga. App. at p. 579.

In regard to the first part of the test, plaintiffs contend Dr. Ermutlu exercised sufficient control over Mrs. Watkins such that he could be liable for his failure to prevent the automobile accident and the death of Lisa McCorkle. We disagree. In *Bradley Center,* the patient was a voluntary inpatient in a mental hospital, who shot and killed his wife and her lover while on an unrestricted weekend pass from the private mental hospital. Prior to his release, the patient had made numerous statements to the hospital staff indicating his intention to harm his wife if afforded the opportunity. Although he had been admitted to the private hospital on a voluntary basis, he had, by the terms of the hospital's voluntary admission program, agreed to

certain restrictions on his activity and mobility and the hospital was authorized pursuant to these restrictions to detain him for 48 hours in the event he sought discharge against medical advice. Under these circumstances, this court determined the patient was under the control of the mental hospital.

Unlike the patient in *Bradley Center*, Mrs. Watkins was a voluntary outpatient. Dr. Ermutlu had no control of Mrs. Watkins in the sense that he could claim legal authority to confine or restrain her against her will unless she met the criteria for involuntary commitment set forth in OCGA § 37-3-1 (9.1). Thus, if Mrs. Watkins had not acquiesced in the treatment plan prescribed by Dr. Ermutlu, he could not have unilaterally imposed the treatment plan upon her except in the most extraordinary circumstances. OCGA § 37-3-163. This court has previously held in order for this duty to control to arise, the physician must be able to "[exercise] control over the freedom of a mental patient." (*Peace v. Weisman*, 186 Ga. App. 697, 700 (3) (368 SE2d 319) (1988)) or "claim the legal authority to confine or restrain [the patient] against his will." *Baldwin v. Hosp. Auth. of Fulton County*, 191 Ga. App. 787, 789 (383 SE2d 154) (1989). Applying these standards to the present case, we conclude that Dr. Ermutlu neither had the right nor the ability to control Mrs. Watkins' conduct. See also *Hasenei v. United States*, 541 FSupp. 999 (D. Md. 1982).

The evidence also fails to meet the second part of the *Bradley Center* test, requiring a showing that the physician knew or reasonably should have known that a patient was likely to cause bodily harm to herself or others. The evidence in this case indicates that Mrs. Watkins did not meet the criteria for involuntary commitment on June 29, 1988, in that she did not pose a substantial risk of imminent harm to herself or others, as manifested by either recent overt acts or recent expressed threats of violence which presented a probability of physical injury to herself or other persons; nor was she so unable to care for her own physical health and safety as to create an imminently life-endangering crisis. OCGA § 37-3-1 (9.1). Instead, the record indicates that following the one manic episode on June 29, 1988, Mrs. Watkins failed to exhibit further excessive, bizarre or inappropriate behavior. She exhibited no overt signs from which Dr. Ermutlu or her family should have reasonably known that Mrs. Watkins was likely to cause harm to others. "Thus, in contrast to the *Bradley Center* case, there is no basis upon which [Dr. Ermutlu] can reasonably be charged with the breach of a duty to foresee and prevent an injury to third persons." *Baldwin v. Hosp. Auth. of Fulton County*, supra at 790.

2. Moreover, the evidence fails to establish another of the elements necessary in any action for negligence, "a legally attributable causal connection between the conduct and the resulting injury." *Lee*

*Street Auto Sales v. Warren,* supra at 347. The record is devoid of any evidence indicating the accident was caused by Mrs. Watkins' mental condition. Even plaintiffs' medical expert witness had to admit he could not state with any degree of medical certainty that Mrs. Watkins' mental disorder caused the accident.

Moreover, even assuming the evidence had raised a question of fact as to the "cause in fact" of the accident, the causal connection between Dr. Ermutlu's conduct and plaintiffs' injury is too remote for the law to allow a recovery. Mrs. Watkins had been driving an automobile during the entire period of her mental illness (approximately 26 years) without being involved in a traffic accident, receiving a traffic ticket, or displaying behavior which would in any way indicate her mental condition impaired her driving skills. Under this set of circumstances, we must conclude as a matter of law that Dr. Ermutlu could not have foreseen that Mrs. Watkins' mental illness would have caused the death of Lisa McCorkle. "Although under Georgia law questions of negligence and proximate cause are ordinarily for the jury, plain and indisputable cases may be decided by the court as a matter of law. (Cits.) In such plain cases (t)he inquiry is not whether the defendant's conduct constituted a cause in fact of the injury, but rather whether the causal connection between that conduct and the injury is too remote for the law to countenance a recovery." (Citation and punctuation omitted.) *Strickland v. DeKalb Hosp. Auth.*, 197 Ga. App. 63, 67 (2d) (397 SE2d 576) (1990). "Negligence is predicated on what should have been anticipated rather than on what happened. And one is not bound to anticipate or foresee and provide against that which is unusual or that which is only remotely and slightly probable." (Citation and punctuation omitted.) Id. at 68.

Accordingly, the trial court erred in denying defendant's motion for summary judgment.

*Judgment reversed. Birdsong, P. J., and Cooper, J., concur.*

DECIDED FEBRUARY 28, 1992 —
RECONSIDERATION DENIED MARCH 12, 1992 — 

*Michael J. Bowers, Attorney General, Mary F. Russell, Assistant Attorney General, Hicks, Maloof & Campbell, Bruce M. Edenfield,* for appellant.

*Henning, Aitkens, Snellings & Kearns, Stanley T. Snellings, McLain & Merritt, Howard M. Lessinger, Johnson & Montgomery, Albert S. Johnson,* for appellees.

*Alston & Bird, Ruth H. Gershon,* amicus curiae.