A03A1933. HOUSTON et al. v. BEDGOOD.

(588 SE2d 437)

ELDRIDGE, Judge.

In this wrongful death action, appellants-plaintiffs Jerry Houston, as the administrator of the estate of Tami Michelle Houston, Jerry Houston and Cathy Gassett individually and as the surviving parents of Tami Michelle Houston appeal from the order of the Bartow County Superior Court granting appellee-defendant Raymond Bedgood, M.D., summary judgment upon the Houstons' claims against him. These were claims for medical malpractice, negligence, and negligence per se arising out of Dr. Bedgood's issuance of a Department of Transportation ("DOT") Medical Examiner's Certificate certifying Edward Stoker as physically fit to drive a commercial, over-the-road tractor-trailer pursuant to the federal motor carrier safety statute and regulation, 49 USC § 31101 et seq. and 49 CFR § 391.1 et seq. The Houstons contend that summary judgment for Dr. Bedgood was error for the superior court's finding that Dr. Bedgood

had no duty of care to nonpatient decedent Houston under the federal motor carrier safety regulation. Alternatively, the Houstons contend that the superior court erred in finding no duty of care to decedent Houston because: a special relationship existed between Dr. Bedgood and Stoker in which Dr. Bedgood exercised control over Stoker as a physician; a special relationship existed between Dr. Bedgood and the decedent as a member of the motoring public; or Dr. Bedgood owed the decedent a duty of care upon Dram Shop Act analysis.

> The standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). When ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 596 (370 SE2d 843) (1988). Further, this court conducts a de novo review of the law and the evidence. *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997).

*Clark v. Cauthen*, 239 Ga. App. 226, 227 (1) (520 SE2d 477) (1999).

So viewing the evidence, the accident which gives rise to this action occurred on I-75 South in Bartow County at 9:34 a.m., July 13, 2000. A tractor-trailer, owned by Bryant Transportation, Inc. and driven by its employee, Stoker, yawed to left out of I-75 North; crossed over the grassy median area; continued into the southbound lanes of I-75; and collided with decedent's vehicle and that of Marda Morelli, killing both. Stoker died in the accident as well, his death certificate indicating that he probably died suddenly before the accident as a result of pre-existing coronary heart disease. Stoker was then under the care of two physicians, his personal physician, Dr. Bedgood who had first seen him on February 17, 1998, and Marvin L. Mills, M.D., the cardiologist who first saw him after he suffered a heart attack on July 19, 1998.

After an arterial blockage was found following the heart attack, an angioplasty procedure was performed and a stent installed. On April 18, 2000, Dr. Mills saw Stoker for a checkup following an earlier post-heart attack visit and found Stoker's organic heart disease fully compensated. On the same date, Stoker was also examined by Dr. Bedgood who issued a DOT Medical Examiner's Certificate certifying that Stoker was physically fit to operate a commercial vehicle pursuant to the federal motor carrier safety statute and regulation as without any "current" heart problems. Pat Callahan, Bryant's Direc-

tor of Safety, certified Stoker to drive for Bryant after receiving such medical examiner's certificate. *Held:*

1. The Houstons challenge the superior court's finding that Dr. Bedgood owed no duty of care to the decedent Houston under the federal motor carrier safety statute and regulation. Pertinently, they argue such a duty of care to decedent Houston existed on the basis of the public policy protecting the motoring public as evidenced by the requirement for a DOT physical examination and medical examiner's certificate certifying fitness to drive as an over-the-road carrier. The Houstons, however, point to no provision in the statute or regulation creating a duty of care in medical examiner physicians, and we find none. Under these circumstances, the superior court did not err in granting Dr. Bedgood summary judgment upon the finding that there was no authority in federal law or regulation imposing a duty of care upon physicians for the benefit of the motoring public.

2. The Houstons also argue a duty of care in Dr. Bedgood as to their decedent daughter under the common law of Georgia relying on the federal motor carrier safety statute and regulation. Specifically, they assert that Dr. Bedgood owed the decedent a duty of care because: he had a special relationship with Stoker requiring him to control Stoker for the protection of others; his duty to control Stoker as incident to his responsibility as a medical examiner to certify Stoker as fit to drive; he had a special relationship with the decedent Houston as a member of the motoring public for federal motor carrier statute and regulation aimed at promoting commercial motor vehicle highway safety and driver fitness to that end; and his obligations as a medical examiner warranted imposition of a duty of care akin to that under the Dram Shop Act.

> To state a cause of action for negligence in Georgia, a plaintiff must show (1) a legal duty to conform to a standard of conduct raised by [the] law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) [some] loss or damage to plaintiff['s] legally protected interest [as a result of the alleged breach of the legal duty].

*Shortnacy v. North Atlanta Internal Medicine*, 252 Ga. App. 321, 325 (556 SE2d 209) (2001), citing *Bradley Center v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982). Generally, there also is "no duty to control the conduct of third persons to prevent them from causing . . . harm to others[,]" *Shortnacy v. North Atlanta Internal Medicine*, supra; *Bradley Center v. Wessner*, supra, as, for example, in the absence of a physician-patient privity, there can be no liability for

medical malpractice. *Peace v. Weisman*, 186 Ga. App. 697, 698 (1) (368 SE2d 319) (1988). However, there are two exceptions: a special relationship exists between the actor and another imposing a duty on the actor to control such person's conduct for the benefit of third persons, or a special relationship exists between the actor and another giving such person a right to protection. *Shortnacy v. North Atlanta Internal Medicine*, supra; Restatement (Second) of Torts, § 315.

(a) *Duty of Care — Special Relationship Requiring Patient Control for the Protection of Third Parties.* The Houstons rely on *Bradley Center v. Wessner*, supra, for the proposition that Dr. Bedgood had a duty to their decedent daughter as a third party because his relationship to Stoker as a DOT medical examiner "controlled" Stoker's eligibility for employment with Bryant as a commercial driver. This reflects a fundamental misunderstanding of *Wessner*. Therein, our Supreme Court held a medical facility liable for its failure to exercise reasonable care to "control" a mental patient for the purpose of preventing harm to others it knew or should have known to be endangered by the patient.[1] However, absent legal authority in the physician to place restraints on the liberty of his patient, the duty to control does not arise. *Ermutlu v. McCorkle*, 203 Ga. App. 335, 337 (1) (416 SE2d 792) (1992); *Baldwin v. Hosp. Auth. of Fulton County*, 191 Ga. App. 787, 789 (2) (383 SE2d 154) (1989). The patients in *Ermutlu* and *Baldwin* as outpatient mental patients over which the treating physicians had no legal authority to confine or restrain, *Ermutlu v. McCorkle*, supra; *Baldwin v. Hosp. Auth. of Fulton County*, supra, no duty to control obtained, foreclosing liability in the treating physicians. While the record shows that Dr. Bedgood was Stoker's treating physician for matters other than cardiology, nothing of record shows that Dr. Bedgood had authority in law to restrain Stoker for the protection of others. Neither is there any evidence showing that Dr. Bedgood exercised any such authority over Stoker. In light of the foregoing, the superior court did not err in granting Dr. Bedgood summary judgment upon the Houstons' claims against him on the basis of its finding that Dr. Bedgood had no duty to control Stoker. *Ermutlu v. McCorkle*, supra; *Baldwin v. Hosp. Auth. of Fulton County*, supra.

---

[1] In reaching its holding, the Supreme Court adopted this Court's statement of the legal duty at issue as follows:

> [W]here the course of treatment of a . . . patient involves an exercise of "control" over him by a physician who knows or should know that the patient is likely to cause bodily harm to others, an independent duty arises from that relationship and falls upon the physician to exercise that control with such reasonable care as to prevent harm to others at the hands of the patient. *Bradley Center v. Wessner*, 161 Ga. App. 576, [581 (287 SE2d 716) (1982)].

(Punctuation omitted.) *Bradley Center v. Wessner*, supra at 201.

(b) *Duty of Care — Special Relationship to Another Person*. Pointing to his status as a medical examiner under the federal motor carrier safety statute and its implementing regulation, the Houstons cite *Shortnacy v. North Atlanta Internal `Medicine*, supra at 321, for the proposition that Dr. Bedgood had a special relationship to the decedent as a member of the motoring public, this imposing an actionable duty of care upon him under the second exception to the general rule. The special relationship which the Houstons rely on "applies only to liability of a governmental entity for the acts or omissions of the police or similar governmental public safety agency in its duties to the public. *Huntington v. City of Atlanta*, 241 Ga. App. 301 (527 SE2d 6) (1999); see *Rowe v. Coffey*, 270 Ga. 715, 716 (515 SE2d 375) (1999)." *Shortnacy v. North Atlanta Internal Medicine*, supra at 326 (2) (b). No such agency or duties as here in issue, the superior court did not err in declining to expand such duty to the instant situation. Id.; see also *Vance v. T. R. C.*, 229 Ga. App. 608, 610 (1) (a) (494 SE2d 714) (1997) ("physician's [statutory] duty to report child abuse [to proper authorities does not create a civil cause of action and] is not analogous [to the public duty doctrine]").

(c) *Duty of Care — Dram Shop Act*. The Houstons further argue a duty of care in Dr. Bedgood as to third-party decedent Houston as analogous to that imposed on alcohol providers under the Dram Shop Act, OCGA § 51-1-40.[2] We disagree. The reach of the Act as limited to alcohol providers is plain and unambiguous on its face. Further, we have expressly declined to find that the duty of a health care provider to the public at large is similar to the duty imposed on providers of alcohol pursuant to OCGA §§ 51-1-40 and 3-3-22. *Shortnacy v. North Atlanta Internal Medicine*, supra at 327 (2) (c). Accordingly, the grant of summary judgment was not error on this account.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

---

[2] The Dram Shop Act provides that
[a] person who sells, furnishes, or serves alcoholic beverages to a person of lawful drinking age shall not thereby become liable for injury, death, or damage caused by or resulting from the intoxication of such person, including injury or death to other persons; provided, however, a person who willfully, knowingly, and unlawfully sells, furnishes, or serves alcoholic beverages to a person who is not of lawful drinking age, knowing that such person will soon be driving a motor vehicle, or who knowingly sells, furnishes, or serves alcoholic beverages to a person who is in a state of noticeable intoxication, knowing that such person will soon be driving a motor vehicle, may become liable for injury or damage caused by or resulting from the intoxication of such minor or person when the sale, furnishing, or serving is the proximate cause of such injury or damage.
OCGA § 51-1-40 (b).

144

*Miller & Martin, William P. Eiselstein, Scherffius, Ballard, Still & Ayres, Edward R. Still,* for appellants.

*Minor, Bell & Neal, William F. Jourdain, John R. McCown, Jonathan Bledsoe, Magill & Atkinson, Thomas E. Magill, Coppedge & Leman, Warren N. Coppedge, Jr.,* for appellee.

*Owen, Gleaton, Egan, Jones & Sweeney, H. Andrew Owen, Jr., Amy J. Kolczak,* amici curiae.