A05A0014. GILHULY et al. v. DOCKERY et al.
A05A0339. GILHULY et al. v. DOCKERY.
(615 SE2d 237)

MILLER, Judge.

Penny and Robert Dockery sued Dr. Michael Gilhuly and various other health care providers[1] on behalf of their two sons. Although their sons did not have a physician-patient relationship with Dr. Gilhuly, the Dockerys claim that Penny's own medical malpractice claim as Dr. Gilhuly's patient entitles the Dockerys to additional causes of action against Dr. Gilhuly related to the death of one son and the personal injuries of the other.[2] Specifically, the Dockerys claim that Dr. Gilhuly's failure to warn Penny that she should not drive after taking certain medications entitles them to sue Dr. Gilhuly on their injured son's behalf (Case No. A05A0014) and for the wrongful death of their other son (Case No. A05A0339) in connection with a car accident in which Penny was driving. Dr. Gilhuly moved for summary judgment below, which was denied. Since the trial court's ruling is contrary to Georgia law, we must reverse.

On appeal from the grant or denial of a motion for summary judgment, we conduct a de novo review of the law and evidence, viewing the evidence in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact exists and whether

---

[1] The Dockerys also sued Dr. Gilhuly's corporation, Dr. Gerald Bertolazzo and his related corporation, Wellstar Emergency Physicians, LLC, Wellstar Health System, Inc., Independent Physicians Resource Group, Inc., and a registered nurse. In addition to the Dockerys' claims for wrongful death relating to one son and personal injury for the other, Robert Dockery sued the health care providers for the surviving son's medical expenses and for loss of the surviving son's services. The Bertolazzo Group, LLC, Wellstar Emergency Physicians, LLC, and Independent Physicians Resource Group, Inc., were later dismissed from the case. For ease of reference, the remaining health care providers relevant to this appeal will be hereinafter referred to collectively as "Dr. Gilhuly."

[2] Penny Dockery's individual medical malpractice claim is still pending in the trial court and is not at issue in the present appeal. To the extent that Penny Dockery may have an individual medical malpractice claim against Dr. Gilhuly for his alleged failure to warn her that she should not drive, such claim is not dispositive of the issue that we must decide here, which is whether or not Penny's own malpractice claim entitles the Dockerys to additional causes of action relating to children who were not Dr. Gilhuly's patients.

the moving party was entitled to judgment as a matter of law. *Holbrook v. Stansell*, 254 Ga. App. 553, 553-554 (562 SE2d 731) (2002).

So viewed, the evidence reveals that Penny went to the emergency room at Wellstar Cobb Hospital on May 8, 1999, with symptoms of nausea, vomiting, diarrhea, and low back pain. Dr. Gilhuly prescribed Demerol and Phenergan to treat the pain and nausea, which were administered to Penny intravenously. Although these medications can cause drowsiness, Penny was discharged from the hospital that same evening without being given a warning not to drive.

However, Penny was not driving when she left the hospital. She left the hospital with an adult friend who drove her to her mother's home to pick up her two sons. They picked up the children, and the adult friend continued to drive to his home. After dropping him off, Penny started driving with the children back to her home. A few minutes later, she was involved in a car accident in which she and one of her sons were seriously injured and her other son was killed.

All of the Dockerys' claims with respect to their sons, who were never Dr. Gilhuly's patients, stem from the alleged medical malpractice that Dr. Gilhuly committed with respect to Penny. However, "Georgia law is clear that physician-patient privity is an absolute requirement for the maintenance of a professional malpractice action." *Schrader v. Kohout*, 239 Ga. App. 134, 135 (522 SE2d 19) (1999); see also *Peace v. Weisman*, 186 Ga. App. 697, 698 (1) (368 SE2d 319) (1988). This Court has previously held, for example, that third parties who were injured by a patient who drove after taking Demerol and Phenergan could not maintain a malpractice cause of action against the treating doctor because no physician-patient relationship existed between the injured persons and the doctor. See *Shortnacy v. North Atlanta Internal Medicine*, 252 Ga. App. 321, 325 (2) (556 SE2d 209) (2001).

Moreover, a doctor, like any actor, generally has no duty to exercise control over third persons to prevent them from harming others. See *Shortnacy*, supra, 252 Ga. App. at 325 (2). A narrow exception exists to this rule in situations where a physician has control over a patient who is known to be violent and causes harm to others. See *Bradley Center v. Wessner*, 161 Ga. App. 576, 581 (1) (287 SE2d 716) (1982). Such exception does not apply here. See *Shortnacy*, supra, 252 Ga. App. at 325 (2) (a). The only other exception to the general rule, which also does not apply here, would require a specific special relationship between the doctor and the injured party which would give such injured party a right to protection. See *Houston v. Bedgood*, 263 Ga. App. 139, 143 (2) (b) (588 SE2d 437) (2003) (physician does not have special relationship with the "motoring

public" that would create any duty to motorist killed in car accident with patient); *Shortnacy*, supra, 252 Ga. App. at 326 (2) (b).

To expand a doctor's duty to his patient to generally include members of the public at large in a case such as this one would be contrary to Georgia public policy:

> A physician's first loyalty must be to his patient. Imposing a duty on a physician to predict a patient's behavioral reaction to medication and to identify possible plaintiffs would cause a divided loyalty. Were we to impose a duty on a physician to consider the risk of harm to third persons before prescribing medication to a patient, we would be forcing the physician to weigh the welfare of unknown persons against the welfare of his patient. Such an imposition is unacceptable.

(Citations omitted.) *Shortnacy*, supra, 252 Ga. App. at 327 (2) (c). The Dockerys' attempt to bootstrap Penny Dockery's medical malpractice claims into further causes of action against Dr. Gilhuly relating to their sons is thus contrary to Georgia law and public policy. Dr. Gilhuly had no duty to the sons here, as they were not his patients. Further, no exception applies in this case to the general rule that a doctor does not have any duty to such third parties. The trial court therefore erred in denying summary judgment to Dr. Gilhuly. See *Houston*, supra, 263 Ga. App. at 141-143 (2) (a), (b); *Shortnacy*, supra, 252 Ga. App. at 325-327 (2) (a), (b), (c).

*Judgments reversed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED MAY 24, 2005.

*Huff, Powell & Bailey, Randolph P. Powell, Jr., Anna B. Fretwell, Green, Johnson & Landers, Henry D. Green, Jr., David V. Johnson, Lawrence J. LoRusso*, for appellants.

*Vinson, Talley, Richardson & Cable, James G. Richardson, James J. Phillips, Samuel P. Pierce, Jr., Frank J. Sparti II*, for appellees.