**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS***
***COURT. ALL FILINGS MUST BE SUBMITTED WITHIN***
***THE TIMES SET BY OUR COURT RULES.***

**September 17, 2020**

# In the Court of Appeals of Georgia

A20A0894. JANET LEE GRAHAM STANLEY et al. v. FLOYD P.
   GARRETT et al.

DILLARD, Presiding Judge.

While driving under the influence of alcohol and prescription drugs, Jeffrey

Fettig struck a vehicle driven by Thomas Stanley, resulting in Stanley's death.

Thereafter, Janet Stanley, Thomas's wife, filed a lawsuit against Dr. Floyd Garrett,

the psychiatrist who had been treating Fettig for alcoholism.[1] Specifically, Janet

alleged that Garrett's negligence in treating Fettig and failure to prevent him from

driving—despite meeting with him a few hours prior to the accident—led to the fatal

collision. Garrett successfully moved to dismiss Stanley's professional-negligence

claim and, later, successfully moved for summary judgment as to her ordinary-

---

[1] For the sake of simplicity, we refer to Garrett and his medical practice
collectively as "Garrett" throughout this opinion.

negligence claim. On appeal, Stanley argues that the trial court erred in granting Garrett's motion for summary judgment and his motion to dismiss. She further contends that the trial court erred in partially denying her motion to exclude expert testimony and partially granting Garrett's similar motion. For the reasons set forth *infra*, we affirm.[2]

Viewed in the light most favorable to Stanley (*i.e.*, the nonmoving party),[3] the record shows that in September 2014, Fettig began seeing Garrett—a psychiatrist with extensive experience in treating alcohol and drug addiction—on an outpatient basis for treatment of his alcoholism and depression. At their first session, Garrett prescribed Lorazepam—an anti-anxiety medication—to help Fettig during the alcohol-withdrawal process. Then, over the course of the next month, Fettig met with

---

[2] Oral argument was held in this case on May 5, 2020, and is currently archived on the Court's website for public viewing. See Court of Appeals of Georgia, Oral Argument, Case No. A20A00894 (May 5, 2020), available at https://www.gaappeals.us/oav/A20A0894.php

[3] *See, e.g.*, *Swanson v. Tackling*, 335 Ga. App. 810, 810 (783 SE2d 167) (2016) (noting that in reviewing a grant of summary judgment, we view all evidence in the light most favorable to the nonmovant). We similarly review a trial court's ruling on a motion to dismiss for failure to state a claim. *See Zephaniah v. Ga. Clinic, P.C.*, 350 Ga. App. 408, 410 (829 SE2d 448) (2019) (noting that in reviewing a motion to dismiss for failure to state a claim, we construe the pleadings in "the light most favorable to the plaintiff with all doubts resolved in the plaintiff's favor" (punctuation omitted)).

Garrett for several more sessions, ending his treatment on October 6, 2014. And for the next four months, Fettig managed to remain sober. But in late February 2015, while on a business trip in Colorado, Fettig relapsed. As a result, he cut his trip short and returned to Atlanta on February 26, 2015. Once he arrived home, Fettig's wife contacted Garrett's assistant and scheduled an emergency session for noon on Saturday, February 28, 2015, at Garrett's Buckhead office.

Although Fettig could not recall when, at some point on February 28, 2015, he took one of the Lorazepam that Garrett previously prescribed. At 9:00 a.m. that day, he attended an Alcoholics Anonymous meeting. Then, after the meeting concluded, Fettig went to a tavern, arriving when it opened at 11:00 a.m. And during the forty minutes he was there, Fettig drank five beers. He then drove nearly two miles down the street to Garrett's office to attend his emergency session. Although Fettig later speculated that he must have been intoxicated, he apparently attended the session without incident. Following the session, Fettig drove back up the street—again nearly two miles—to a neighborhood pub that he frequented when he previously lived in the area. At the pub, he drank a few more beers before driving to a burger restaurant in Marietta not far from his home. Once there, he drank two more beers before the bartender stopped serving him. Fettig then left the restaurant, and, shortly thereafter,

3

his vehicle collided with Thomas Stanley's vehicle, resulting in Thomas's death. At the hospital, blood taken from Fettig indicated a blood-alcohol content of 0.192 percent and a Lorazepam concentration of 36 micrograms per liter.

Following her husband's death, Janet Stanley filed a lawsuit against Garrett and his medical practice, alleging that Garrett's negligence in both his treatment of Fettig and his failure to prevent Fettig from driving—despite meeting with him a few hours prior to the accident—led to the fatal collision. And filed with Stanley's complaint was an affidavit from a psychiatrist, who averred that Garrett's treatment of Fettig deviated from the standard of care for such patients. Garrett filed an answer and a motion to dismiss for failure to state a claim, arguing that Stanley could not recover for any professional negligence related to his treatment of Fettig because physician-patient privity was required to maintain such a claim. Stanley responded, but the trial court granted Garrett's motion and dismissed Stanley's professional-negligence claim.

After discovery concluded, Garrett filed a motion for summary judgment as to Stanley's remaining claim of ordinary negligence. And prior to responding to Garrett's motion, Stanley filed a motion to exclude one of Garrett's expert witnesses. Garrett responded and filed his own motion to exclude certain testimony of one of

Stanley's expert witnesses. Subsequently, Stanley filed her response to Garrett's motion for summary judgment. Then, after holding a hearing on the matter, the trial court granted Garrett's motion for summary judgment, finding, *inter alia*, that Garrett had no duty to exercise control over Fettig to prevent him from harming others. In the same order, the trial court denied both parties' motions to exclude expert testimony, finding them moot; but in a footnote, the court added that if its order on summary judgment were reversed, it would grant both motions in part and deny them in part. This appeal follows.

1. Stanley first contends that the trial court erred in granting Garrett summary judgment as to her ordinary-negligence claim, arguing that genuine issues of material fact exist as to whether Garrett had a duty to exercise control over Fettig to prevent him from harming others. We disagree.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4] If summary judgment is granted, it enjoys no presumption of correctness on appeal, and an appellate court must satisfy itself that

_____

[4] OCGA § 9-11-56 (c).

5

the requirements of OCGA § 9-11-56 (c) have been met.[5] In conducting this *de novo*

review, we are charged with "viewing the evidence, and all reasonable conclusions

and inferences drawn from the evidence in the light most favorable to the

nonmovant."[6] Bearing these guiding principles in mind, we turn to Stanley's specific

claims of error.

Stanley contends that the trial court erred in granting summary judgment as to

her ordinary-negligence claim on the ground that, as a matter of law, Garrett had no

duty to exercise control over Fettig to prevent him from harming others. In order to

have a viable negligence action, a plaintiff "must satisfy the elements of the tort,

namely, the existence of a duty on the part of the defendant, a breach of that duty,

causation of the alleged injury, and damages resulting from the alleged breach of the

duty."[7] Specifically, a "legal duty" is the "obligation to conform to a standard of

---

[5] *See Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010) ("Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met.").

[6] *Benefield v. Tominich*, 308 Ga. App. 605, 607 (1) (708 SE2d 563) (2011) (punctuation omitted); *accord Swanson*, 335 Ga. App. at 810.

[7] *Rasnick v. Krishna Hospitality, Inc.*, 289 Ga. 565, 566 (713 SE2d 835) (2011); *accord John Crane, Inc. v. Jones,* 278 Ga. 747, 751 (604 SE2d 822) (2004).

6

conduct under the law for the protection of others against unreasonable risks of harm."[8] But the innocence of the plaintiff is

> immaterial to the existence of the legal duty on the part of the defendant in that the plaintiff will not be entitled to recover unless the defendant did something that it should not have done, i.e., an action, or failed to do something that it should have done, i.e., an omission, pursuant to the duty owed the plaintiff under the law.[9]

And such a duty can arise either from "a valid legislative enactment, that is, by statute, or be imposed by a common law principle recognized in the caselaw."[10] Nevertheless, as the Supreme Court of Georgia has recently held, there is no general legal duty to all the world not to subject others to an unreasonable risk of harm.[11]

---

[8] *Rasnick*, 289 Ga. at 566.

[9] *Id.*

[10] *Id.* at 566-67; *accord Murray v. Ga. Dept. of Transp.*, 284 Ga. App. 263, 272 (4) (644 SE2d 290) (2007).

[11] *See Ga. Dept. of Labor v. McConnell*, 305 Ga. 812, 816 (3) (a) (828 SE2d 352) (2019) (disapproving of *Bradley Center v. Wessner*, 250 Ga. 199, 201 (296 SE2d 693) (1982), to the extent that it created a general legal duty "to all the world not to subject [others] to an unreasonable risk of harm" (punctuation omitted)).

Finally, and importantly with regard to reviewing a grant of summary judgment, "[t]he existence of a legal duty is a question of law for the court."[12]

As a general rule, there is no duty to "control the conduct of third persons to prevent them from causing physical harm to others."[13] And specifically, a doctor—like any actor—generally has "no duty to exercise control over third persons to prevent them from harming others."[14] But the two exceptions to this rule are when "a special relationship exists between the actor and another imposing a duty on the actor to control such person's conduct for the benefit of third persons, or a special

---

[12] *Rasnick*, 289 Ga. at 567; *see Sheaffer v. Marriott Int'l, Inc.*, 349 Ga. App. 338, 340 (1) (826 SE2d 185) (2019) (holding that whether the defendant owes plaintiff a legal duty is a question of law).

[13] *Shortnacy v. N. Atlanta Internal Medicine, P.C.*, 252 Ga. App. 321, 325 (2) (556 SE2d 209) (2001); *see SecureAlert, Inc. v. Boggs*, 345 Ga. App. 812, 816 (815 SE2d 156) (2018) (noting that as a general rule, under Georgia law, there is no duty to control the conduct of third persons to prevent them from causing physical harm to others).

[14] *Gilhuly v. Dockery*, 273 Ga. App. 418, 419 (615 SE2d 237) (2005); *accord Bruscato v. Gwinnett-Rockdale-Newton Comm. Svc. Bd.*, 290 Ga. App. 638, 639 (1) (660 SE2d 440) (2008).

relationship exists between the actor and another giving such person a right to protection."[15]

Turning to the issue before us, Stanley argues that Garrett owed a duty under the first exception as outlined in *Bradley Center v. Wessner*.[16] In that case, a voluntary inpatient in a mental hospital shot and killed his wife while out on an unrestricted weekend pass, despite previously making numerous statements to hospital staff indicating his intention to harm his wife.[17] Furthermore, although the patient had been admitted to the private hospital on a voluntary basis, by the terms of his admission, the hospital was authorized to detain him for 48 hours in the event he sought discharge against medical advice.[18] Given these circumstances, in affirming a jury verdict in favor of the victim's child's negligence claim against the hospital, our Supreme Court held that

> when the course of treatment of a mental patient involves an exercise of 'control' over him by a physician who knows or should know that the

---

[15] *Houston v. Bedgood*, 263 Ga. App. 139, 142 (2) (588 SE2d 437) (2003); *accord Gilhuly*, 273 Ga. App. at 419-20.

[16] 250 Ga. 199.

[17] *See id.* at 199-200.

[18] *See id.*

patient is likely to cause bodily harm to others, an independent duty arises from that relationship and falls upon the physician to exercise that control with such reasonable care as to prevent harm to others at the hands of the patient.[19]

Consequently, *Bradley Center* essentially established a two-part test for determining the circumstances under which a physician may be liable to a third party: "(1) the physician must have control over the mental patient; and (2) the physician must have known or reasonably should have known that the patient was likely to cause bodily harm to others."[20] But critically, "absent legal authority in the physician to place restraints on the liberty of his patient, the duty to control does not arise."[21] And here, it is undisputed that—unlike the hospitalized inpatient in *Bradley Center*—Fettig was

---

[19] *Id.* at 201 (1) (punctuation omitted).

[20] *Ermutlu v. McCorkle*, 203 Ga. App. 335, 336 (1) (416 SE2d 792) (1992); *see Bradley Center*, 250 Ga. at 201-02 (1) (holding that one who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm); *Shortnacy*, 252 Ga. App. at 326 (2) (same).

[21] *Houston*, 263 Ga. App. at 142 (2) (a); *see Bradley Center*, 250 Ga. at 201 (1) (explaining the importance of control in determining if physician has duty); *Shortnacy*, 252 Ga. App. at 326 (2) (a) (noting that the "emphasis on control over the patient as the touchstone for imposing this duty to third parties for the criminal acts of the patient has been repeatedly stated").

a voluntary outpatient over whom Garrett had no legal authority to confine or restrain.[22]

Nevertheless, Stanley maintains that Garrett could have exercised control over Fettig by committing him to involuntary treatment under OCGA § 37-7-41 (a), which, in part, provides: "Any physician within this state may execute a certificate stating that he has personally examined a person within the preceding 48 hours and found that, based upon observations set forth in the certificate, the person appears to be an alcoholic, a drug dependent individual, or a drug abuser requiring involuntary treatment." But Stanley cites no authority to support her implicit contention that a

---

[22] *See Gilhuly*, 273 Ga. App. at 419 (holding that emergency-room physician who prescribed patient medication that could cause drowsiness had no duty to exercise control over patient and, thus, was not liable for injuries to plaintiffs suffered as a result of patient causing an automobile accident); *Houston*, 263 Ga. App. at 142 (2) (a) (concluding that physician who issued DOT certificate declaring truck driver as fit to drive and free of current heart disease did not have duty to control driver for the protection of motorist killed in collision when truck driver apparently died of heart failure while driving); *Shortnacy*, 252 Ga. App. at 326 (2) (a) (holding that physician had no duty to control patient he treated on an outpatient basis, who collided with another car after receiving an injection of a narcotic analgesic); *Ermutlu*, 203 Ga. App. at 337 (1) (holding that psychiatrist of manic depressive outpatient had no duty to third parties who were killed in motor-vehicle accident caused by patient); *Baldwin v. Hosp. Auth. of Fulton Cty*, 191 Ga. App. 787, 789 (2) (383 SE2d 154) (1989) (finding that physicians who treated patient after he attempted suicide one day before he killed his wife had no duty to wife because they had no ability to control, *i.e.*, no legal authority to confine or restrain patient against his will).

physician is *required* by this statute to initiate involuntary treatment on a patient any time he or she has reason to believe the patient is under the influence of alcohol. Implicitly, Stanley asserts that we should construe this statute as analogous to a dram-shop act for physicians, but previously "we have expressly declined to find that the duty of a health care provider to the public at large is similar to the duty imposed on providers of alcohol [under] OCGA §§ 51-1-40 and 3-3-22."[23] Accordingly, the trial court did not err in granting summary judgment to Garrett as to Stanley's ordinary-negligence claim.

2. Stanley also contends that the trial court erred in granting Garrett's motion to dismiss her professional-negligence claim. Again, we disagree.

In her complaint, Stanley claims that Garrett breached the standard of care in his treatment of Fettig and that such professional negligence ultimately led to the death of her husband. And indeed, Stanley included with her complaint an affidavit from a psychiatrist, who averred that Garrett's treatment of Fettig deviated from the standard of care for patients such as Fettig. But Georgia law is clear that

---

[23] *Houston*, 263 Ga. App. at 143 (2) (c); *see Shortnacy*, 252 Ga. App. at 327 (2) (c) (noting that to expand a dram-shop duty of health care providers to the public at large would be inconsistent with the physician-patient relationship and contrary to public policy).

12

physician-patient privity is "an absolute requirement for the maintenance of a professional malpractice action."[24] Indeed, it is a well-settled principle of Georgia law that "there can be no liability for malpractice in the absence of a physician-patient relationship."[25] And here, it is undisputed that neither Stanley nor her husband were Garrett's patient. As a result, the trial court did not err in granting Garrett's motion to dismiss Stanley's professional-negligence claim.

3. Stanley further contends that the trial court erred in partially denying her motion to exclude expert testimony and partially granting Garrett's similar motion. But given our holdings in Divisions 1 and 2, *supra*, affirming the trial court's dismissal of all of Stanley's claims, we agree with the trial court that these issues are moot. Accordingly, we need not address them.

---

[24] *Gilhuly*, 273 Ga. App. at 419 (punctuation omitted); *accord Boston Men's Health Ctr., Inc. v. Howard*, 311 Ga. App. 217, 222 (1) (715 SE2d 704) (2011).

[25] *Boston Men's Health Ctr., Inc.*, 311 Ga. App. at 222 (1) (punctuation omitted); *see Herrington v. Gaulden*, 294 Ga. 285, 286 (751 SE2d 813) (2013) (noting that "[t]o make out a case of medical malpractice, the plaintiff usually must prove that she was, in fact, a patient of the defendant-physician"); *Med. Ctr. of Central Ga., Inc. v. Landers*, 274 Ga. App. 78, 84 (1) (b) (616 SE2d 808) (2005) ("Georgia law is clear that physician-patient privity is an absolute requirement for the maintenance of a professional malpractice action." (punctuation omitted)).

13

For all these reasons, we affirm the trial court's grant of Garrett's motion for summary judgment and motion to dismiss for failure to state a claim.

*Judgment affirmed. Rickman and Brown, JJ., concur.*