**THIRD DIVISION
DOYLE, P. J.,
PIPKIN, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**January 25, 2023**

# In the Court of Appeals of Georgia

A22A1210. SMOOT-LEE v. CORIZON HEALTH, INC.

DOYLE, Presiding Judge.

In this negligence action, Wendy Smoot-Lee filed suit against Corizon Health, Inc. She alleged that Corizon failed to provide psychiatric and/or medical treatment to a prison inmate and, as a result, that the inmate attacked her. The trial court granted summary judgment in favor of Corizon. For the reasons set forth infra, we affirm.

Viewed in the light most favorable to Smoot-Lee, as the nonmovant below, the record shows the following.[1] The Chatham County Detention Center ("CCDC") contracted with Corizon, a private provider, to provide medical services at the prison. The agreement provided that Corizon was responsible for all medical care, including

---

[1] See *Callaway Gardens Resort v. Grant*, 365 Ga. App. 222, 223 (878 SE2d 65) (2022).

psychiatric, but excluding psychological care. Corizon had "no responsibility for security at the [CCDC] or for the custody of any inmate at any time[.]" The Chatham County Sheriff's Office ("CCSO") was solely responsible for all inmate custody and security. Both the CCSO and Corizon had "joint responsibility for the identification, care and treatment of inmates . . . who [were] 'security risks' or who present[ed] a danger to themselves or others." The agreement stipulated that Corizon conduct inmate evaluations to identify mental health problems and whether the inmate exhibited "violent or disruptive behavior[.]" Following this determination of need, the agreement required that the inmate be referred to state mental health staff as clinically appropriate. However, the CCSO's decisions "in non-medical matters and matters involving safety of staff and inmates and security of the [CCDC] shall be final." Pursuant to the CCSO's policy manual, in the event that an inmate posed a serious threat to staff or other inmates, the CCSO could place the inmate in special segregated confinement.

In March 2014, the CCSO detained Danielle Burton at the CCDC. As part of the booking process, Corizon issued a mental health referral.[2] CCDC's intake form for Burton showed that she had a "medical problem" and a "mental health issue," and

---

[2] The reasons for the mental health referrals are redacted in the record.

that she had been referred to a counselor. Burton was detained again in May 2014, and Corizon again issued a mental health referral. This referral was marked "urgent," indicating that she should be seen within the next 48 hours.

About a week later, on May 13, Corizon scheduled Burton for lice treatment and issued another mental health referral. Burton requested her psychiatric medications via a kiosk the same day. Corizon acknowledged the request, noting that her mental health appointment was pending. That week, Burton engaged in several instances of disorderly conduct, and during at least one occurrence, CCSO officers had to place Burton in a restraint chair. Corizon examined Burton on May 21 and issued another mental health referral.

By May 27, Burton had still not been seen by a psychiatrist. Corizon had scheduled Burton for lice treatment for that day. When Burton arrived in the medical wing, however, she indicated that she did not want the lice treatment. Smoot-Lee told Burton that she could tell the nurses at the other end of the medical wing that she did not want the treatment. As they were walking down the hall, Burton wanted to stop at a water fountain, but Smoot-Lee told Burton to continue walking. When Burton refused, Smoot-Lee and other officers attempted to restrain her. Burton resisted, injuring Smoot-Lee. Smoot-Lee suffered long-term pain as a result of these injuries,

eventually requiring surgery. Burton later wrote Smoot-Lee an apology letter, stating that she would not have attacked Smoot-Lee if Burton had received her psychiatric medications.

Smoot-Lee sued Corizon and Burton, asserting a negligence claim against Corizon. She alleged that Corizon failed to provide adequate mental health treatment to Burton, resulting in Burton attacking Smoot-Lee. The trial court granted summary judgment in favor of Corizon, and this appeal followed.

"We review de novo a grant or denial of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant."[3] With these guiding principles in mind, we turn to Smoot-Lee's claim of error.

Smoot-Lee argues that the trial court erred in finding that Corizon did not have "control" over Burton. She contends that Burton was not free to leave the jail and could not seek medical attention from another healthcare provider.

"As a general rule, there is no duty to control the conduct of third persons to prevent them from causing physical harm to others. And specifically, a doctor — like

---

[3] (Citation and punctuation omitted.) *Callaway Gardens Resort*, 365 Ga. App. at 223.

any actor — generally has no duty to exercise control over third persons to prevent them from harming others."[4] But there are two exceptions to this general rule, namely "when a special relationship exists between the actor and another imposing a duty on the actor to control such person's conduct for the benefit of third persons, or a special relationship exists between the actor and another giving such person a right to protection."[5]

Regarding the first exception, the one potentially applicable in this case, the Supreme Court of Georgia in the seminal case *Bradley Center v. Wessner*[6] established a two-part test for when a physician may be liable to a third party: "(1) the physician must have control over the mental patient; and (2) the physician must have known or reasonably should have known that the patient was likely to cause bodily harm to

---

[4] (Citations and punctuation omitted.) *Stanley v. Garrett*, 356 Ga. App. 706, 710 (1) (848 SE2d 890) (2020).

[5] (Citation and punctuation omitted.) Id.

[6] 250 Ga. 199, 201 (296 SE2d 693) (1982), disapproved of in part on other grounds by *Dept. of Labor v. McConnell*, 305 Ga. 812, 816 (3) (a) (828 SE2d 352) (2019) (disapproving *Bradley Center* to the extent that it created a general legal duty to all the world not to subject others to an unreasonable risk of harm).

others."[7] In these circumstances, the physician must "exercise that control with such reasonable care as to prevent harm to others at the hands of the patient[.]"[8]

In *Bradley Center*, a voluntary inpatient of a mental health hospital shot and killed his wife while out on an unrestricted weekend pass, despite previously making numerous statements to hospital staff indicating his intention to harm his wife.[9] While the patient had been admitted to the hospital on a voluntary basis, by the terms of his admission, the hospital could detain him for 48 hours if he sought to leave against medical advice.[10] The Supreme Court of Georgia affirmed our decision affirming a jury verdict of a negligence claim brought by the victim's child against the hospital.[11]

Following *Bradley Center*, we have emphasized "control over the patient as the touchstone for imposing this duty" against the medical provider.[12] "[A]bsent legal authority in the physician to place restraints on the liberty of his patient, the duty to

---

[7] (Citation and punctuation omitted.) *Stanley*, 356 Ga. App. at 710 (1).

[8] (Citation and punctuation omitted.) *Bradley Center*, 250 Ga. at 201.

[9] See *Bradley Center*, 250 Ga. at 199-200.

[10] See id. at 200.

[11] See id. at 203.

[12] *Shortnacy v. North Atlanta Internal Med.*, 252 Ga. App. 321, 326 (2) (a) (556 SE2d 209) (2001).

control does not arise."[13] We have thus held that medical providers do not exert the requisite level of control where the patient is with the medical provider on a voluntary outpatient basis.[14] In *Bradley Center*, by contrast, the medical provider was authorized by the patient to detain him for 48 hours.[15]

In this case, while Smoot-Lee correctly notes that Burton was not free to leave the jail, it was the CCSO who exercised this control over Burton — not Corizon. The agreement between the CCSO and Corizon provided that the CCSO was solely responsible for all for inmate custody and security. And it was the CCSO (of which Smoot-Lee was an employee) who actually restrained Burton and the other inmates.

---

[13] (Citation and punctuation omitted.) *Stanley*, 356 Ga. App. at 711 (1).

[14] See, e.g., id. at 711 (1) (holding that a psychiatrist treating a patient for alcohol addiction on a voluntary outpatient basis had no duty to the victim after the patient killed the victim in a drunk-driving collision, and the psychiatrist had seen the patient earlier that day); *Gilhuly v. Dockery*, 273 Ga. App. 418, 419-420 (615 SE2d 237) (2005) (holding that an emergency-room physician who prescribed patient medication that could cause drowsiness had no duty to exercise control over patient and, thus, was not liable for injuries to plaintiffs suffered as a result of patient causing an automobile accident); *Houston v. Bedgood*, 263 Ga. App. 139, 142 (2) (a) (588 SE2d 437) (2003) (concluding that a physician who issued a Department of Transportation certificate declaring a truck driver as fit to drive and free of current heart disease did not have a duty to control the driver for the protection of a motorist killed in collision when the truck driver apparently died of heart failure while driving).

[15] See *Bradley Center*, 250 Ga. at 199.

Accordingly, Corizon did not exercise sufficient control over Burton that would impose liability upon Corizon.[16]

Smoot-Lee contends that Burton met the criteria for involuntary confinement, and thus Corizon had the legal authority to confine or restrain her. While, under some circumstances, we have recognized that the failure to commit may constitute a breach of the duty physicians owe *patients*,[17] we have not done so with respect to *third parties*. Indeed, we have rejected a similar argument in which a third-party plaintiff contended that the healthcare provider should have involuntarily committed an alcoholic patient.[18] And to focus on whether a healthcare provider should have involuntarily committed a patient, rather than whether the provider actually committed or controlled the patient,[19] would virtually eliminate the control prong of the *Bradley Center* test.[20]

---

[16] See *Stanley*, 356 Ga. App. at 711 (1).

[17] See *Peterson v. Reeves*, 315 Ga. App. 370, 378 (3) (727 SE2d 171) (2012).

[18] See *Stanley*, 356 Ga. App. at 711-712 (1).

[19] See OCGA § 37-3-1 (9.1) (A) (i) et seq. (allowing a healthcare provider to involuntarily commit a patient if, among other requirements, the patient "presents a substantial risk of imminent harm to [the patient] or others").

[20] But see *Ermutlu v. McCorkle*, 203 Ga. App. 335, 337 (1) (416 SE2d 792) (1992) (noting that the healthcare provider did not control the patient because, among

For these reasons, we affirm the trial court's summary judgment order in favor of Corizon.

*Judgment affirmed. Pipkin, J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

other factors, the patient did not meet the criteria for involuntary commitment).